IN RE the TERMINATION OF PARENTAL RIGHTS TO
ALEXANDER V., a Person Under the Age of 18:

STEVEN V., Petitioner-Respondent,

v.

KELLEY H., Respondent-Appellant-Petitioner.

Supreme Court

*No. 02–2860. Oral argument October 8, 2003.—Decided
April 28, 2004.*

2004 WI 47

(Also reported in 678 N.W.2d 856.)

[REDACTED]

2

For the respondent-appellant-petitioner there were briefs and oral argument by *Philip J. Brehm,* Janesville.

For the petitioner-respondent there was a brief and oral argument by *Duane M. Jorgenson,* Darlington.

A guardian ad litem brief was filed by *Douglas J. Heenan* and *Block, Scott & Heenan, LLC,* Platteville, and oral argument by *Douglas J. Heenan.*

An amicus curiae brief was filed by *David Wambach, E. Michael McCann, Mary Sowinski,* and *Thomas Binger,* on behalf of Wisconsin District Attorney's Association.

¶ 1. DIANE S. SYKES, J. This termination of parental rights (TPR) case presents two issues for our review: 1) whether partial summary judgment pursuant to Wis. Stat. § 802.08 (2001–02)[1] is available in the first phase of a TPR case, at which parental unfitness is adjudicated; and 2) whether the circuit court is required at the initial TPR hearing to advise the nonpetitioning party of his or her right under Wis. Stat. § 48.422(5) to a continuance to consult with counsel on the issue of judicial substitution.

¶ 2. Alexander V.'s father filed a petition to terminate Kelley H.'s parental rights to Alexander, alleging as grounds that Kelley had been denied physical placement and visitation by court order for more than one year pursuant to Wis. Stat. § 48.415(4). Kelley requested a jury trial. At the fact-finding hearing the circuit court granted the guardian ad litem's motion for summary judgment on the issue of unfitness, based upon the undisputed fact that Kelley had been denied placement and visitation by a court order that had been in place, unmodified, for more than two years. After a dispositional hearing, the circuit court terminated Kelley's parental rights. The court of appeals affirmed, concluding that although the circuit court had committed two procedural errors—by employing summary judgment procedure and failing to advise Kelley of her statutory right to a continuance to consult with counsel about judicial substitution—these errors were harmless. *Steven V. v. Kelley H.*, 2003 WI App 10, 263 Wis. 2d 241, 663 N.W.2d 817. We affirm, although on different reasoning.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 3. A parent who contests a TPR petition has a statutory right to a jury trial at the fact-finding hearing at which his or her parental unfitness is adjudicated—the so-called "grounds" or "unfitness" phase of a TPR proceeding. Wis. Stat. § 48.31(2). The statutory grounds for termination of parental rights are specified in Wis. Stat. § 48.415, and several of these may be proved by official documentary evidence. *See,* e.g., Wis. Stat. § 48.415(1m), (4), (9), and (9m).

¶ 4. By statute and as a matter of procedural due process, parental unfitness must be proved by clear and convincing evidence. Wis. Stat. § 48.31(1); *Santosky v. Kramer,* 455 U.S. 745 (1982). The jury trial right, however, is entirely statutory, not mandated by constitutional due process, and is therefore generally subject to the provisions of the civil procedure code, including the summary judgment statute, Wis. Stat. § 802.08, unless the TPR statutes provide otherwise. *See* Wis. Stat. § 801.01(2). The TPR statutes do not provide otherwise, either explicitly or implicitly.

¶ 5. We conclude that partial summary judgment in the unfitness phase of a TPR case is available where the requirements of the summary judgment statute and the applicable legal standards in Wis. Stat. §§ 48.415 and 48.31 have been met. An order granting partial summary judgment on the issue of parental unfitness where there are no facts in dispute and the applicable legal standards have been satisfied does not violate the parent's statutory right to a jury trial under Wis. Stat. §§ 48.422(4) and 48.31(2), or the parent's constitutional right to procedural due process.

¶ 6. Accordingly, partial summary judgment may be granted in the unfitness phase of a TPR case where the moving party establishes that there is no genuine issue as to any material fact regarding the asserted

grounds for unfitness under Wis. Stat. § 48.415, and, taking into consideration the heightened burden of proof specified in Wis. Stat. § 48.31(1) and required by due process, the moving party is entitled to judgment as a matter of law. We overrule *Walworth County Dep't of Human Servs. v. Elizabeth W.,* 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994), to the extent that it outright prohibited summary judgment in TPR proceedings. The circuit court's use of summary judgment procedure was not error.

¶ 7. We also withdraw the language in *M.W. and I.W. v. Monroe County Dep't of Human Servs.,* 116 Wis. 2d 432, 342 N.W.2d 410 (1984), that purported to articulate a requirement that the circuit court advise any nonpetitioning party in a TPR case of his or her right under Wis. Stat. § 48.422(5) to a continuance to consult with counsel about judicial substitution. *M.W. and I.W.* described too broadly the statutory duties of the circuit court at the initial TPR hearing under Wis. Stat. § 48.422(1). In fact, the statute does *not* require the circuit court to advise nonpetitioning parties of the statutory right to a continuance to consult with counsel regarding judicial substitution. The circuit court's failure to do so here was not error.

## I. FACTS AND PROCEDURAL HISTORY

¶ 8. On August 8, 2001, Steven V., Alexander's father, filed a petition in Grant County Circuit Court to terminate Kelley H.'s parental rights to Alexander. As grounds for termination Steven alleged continuing court-ordered denial of physical placement and visitation for more than one year pursuant to Wis. Stat.

§ 48.415(4).[2] In his petition, Steven alleged that Kelley had been denied custody, placement, and visitation of Alexander by an order of the Brown County Circuit Court that had been in place and remained unmodified for more than one year.

¶ 9. Steven's petition did not contain the order to which it referred, but the motion for summary judgment that is the focus of this appeal did. The documentary record reflects that on May 12, 1999, in Brown County Circuit Court, the Honorable William C. Griesbach awarded Steven sole legal custody and physical placement of Alexander, and denied Kelley custody, placement, and visitation. In written "Findings of Fact, Conclusions of Law, and Judgment of Custody and Placement," filed on June 28, 1999, the circuit court found that Kelley had physically neglected Alexander and had emotionally abused him by trying to "brainwash him" into believing that his father was evil. The court also found that Kelley had attempted to arrange the murder of Steven and his wife, had absconded to California with Alexander, and had made false accusations of child abuse against Steven and his wife. The

---

[2] Wisconsin Statute § 48.415(4) provides:

Continuing denial of periods of physical placement or visitation. Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

(a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

9

court awarded sole custody and physical placement of Alexander to Steven, and denied Kelley custody, placement, and "any and all visitation," concluding that contact between mother and child would endanger Alexander's physical and especially emotional health. The court also imposed a number of conditions that Kelley would need to satisfy before any modification of the ban on visitation would be considered.

¶ 10. An initial hearing on the TPR petition was held in Grant County Circuit Court on September 4, 2001, before the Honorable Robert B. VanDeHey. Kelley appeared with her attorney and requested a jury trial.

¶ 11. On September 17, 2001, Alexander's guardian ad litem filed a "Motion for Summary Judgment or in the Alternative Directed Verdict" in which he asserted that no genuine issue of material fact existed as to the grounds for termination alleged in the petition and that Steven was entitled to judgment as a matter of law. The motion was supported by an affidavit of the guardian ad litem recounting the procedural history of the Brown County custody proceeding, and included a copy of Judge Griesbach's June 28, 1999, order.

¶ 12. Kelley responded to the motion by arguing that *Elizabeth W.* prohibits summary judgment in TPR proceedings. Kelley conceded that directed verdicts were permissible in TPR cases, but insisted that before a directed verdict could be entered in her case, the court was required to empanel a jury to hear evidence.

¶ 13. On October 15, 2001, the circuit court conducted a hearing at which counsel and the court discussed the procedural issues occasioned by the guardian ad litem's motion. Ultimately, the court scheduled a fact-finding hearing for November 2, 2001, and stated that Kelley would have until October 25, 2001, to identify any facts in dispute that would necessitate a

jury trial for fact-finding with respect to the TPR grounds alleged in Steven's petition.

¶ 14. Kelley did not respond by the October 25, 2001, deadline. At the November 2, 2001, hearing, the parties were presented with an order of the court apparently prepared and submitted sometime earlier by the guardian ad litem but dated, signed, and filed on November 2, 2001. The order memorialized what had occurred at the prior hearing, and further provided as follows:

> [t]his matter will be scheduled for fact finding on November 2, 2001 at 2:30 p.m. at which time the Court will rule in favor of the Guardian ad Litem's motion for directed verdict unless Attorney Gaskell, on behalf of Kelley H., files notification to the Court on or before October 25, 2001 that a legitimate issue exists to be tried at trial.

The order also stated that the Motion for Summary Judgment or in the Alternative for Directed Verdict would be heard on October 15, 2001, that is, the date of the prior hearing, two weeks before the order was signed and entered.

¶ 15. Despite these incongruities, the parties agreed at the November 2 hearing that there were no facts in dispute as to the existence of an unmodified court order denying Kelley placement and visitation with Alexander, and that the order had been in place for more than one year. Kelley's attorney stated that "it's clear that, based on what the elements are as grounds in this case, that the Court does have the authority to direct a verdict in regard to that—or summary judgment, I guess, type motion." There was a brief discussion about whether the reasons for Kelley's noncompliance with the conditions set forth in Judge Griesbach's order for modification of the visitation ban would be

relevant at the unfitness phase or at the dispositional phase. Kelley's position was not entirely clear, although at one point her attorney conceded that "if the reasons why she did not comply with that order we believe would not be relevant at the first phase of that, then I agree that fact-finding hearing is not required and we don't need a trial."

¶ 16. The circuit court concluded that the reasons for Kelley's noncompliance "are very relevant but not at this stage." The court then took judicial notice of the file in the Brown County case, which "substantiate[s] that both elements are present, first that [Kelley H.] has been denied periods of physical placement by court order in an action affecting the family and that the notice was given, and second that at least a year elapsed since the order denying periods of physical placement was issued, and there was no modification." The court then scheduled a dispositional hearing, and discussed with counsel the parameters of that hearing. On November 9, 2001, the circuit court entered a written order directing a verdict in favor of Steven on the issue of Kelley's parental unfitness pursuant to Wis. Stat. § 48.415(4). The dispositional hearing was held on April 11 and 12, 2002, after which the circuit court concluded that it was in Alexander's best interests to terminate Kelley's parental rights, and entered judgment accordingly.

¶ 17. Kelley moved for new fact-finding and dispositional hearings, arguing that she had been denied her right to a jury trial for fact-finding and her right to due process, and that there was insufficient evidence to support termination. She also argued that at the time of the initial hearing she had not been informed of her right under Wis. Stat. § 48.422(5) to a continuance to

12

consult with counsel regarding judicial substitution. The circuit court denied the motion.

¶ 18. Kelley appealed, reiterating the claims of error stated in her post-judgment motion. The court of appeals held that pursuant to *Elizabeth W.*, the circuit court had erred by granting what amounted to summary judgment at the grounds phase. However, the court concluded that the error was harmless because there was no dispute of fact relevant to the grounds for termination, and Kelley was not prejudiced by the error. *Kelley H.*, 263 Wis. 2d 241, ¶¶ 22–28. The court of appeals also suggested that *Elizabeth W.*'s prohibition on summary judgment in TPR proceedings might be overbroad, considering that certain grounds for termination were provable by undisputed court order. *Id.*, ¶¶ 15–21. The court nevertheless considered itself bound by *Elizabeth W.*, and stated that any argument that the case had been incorrectly decided must be directed to this court. *Id.*, ¶ 21.

¶ 19. The court of appeals also held that the circuit court's failure to inform Kelley of her right to request a continuance to consult with her attorney about judicial substitution was error, citing language in this court's decision in *M.W. and I.W.* that purports to impose such a warning requirement. *Id.*, ¶¶ 31–35. While the statutory right to a continuance to confer with counsel about judicial substitution was not in fact at issue in *M.W. and I.W.*, this court's opinion contained broad language specifying the circuit court's statutory duties at the initial TPR hearing, including a duty to advise the nonpetitioning party of his or her right to a continuance to consult with counsel about judicial substitution. *See M.W. and I.W.*, 116 Wis. 2d at 440–41. The court of appeals majority declined to treat this language as dicta, but ultimately concluded that the

13

circuit court's error in failing to follow it was harmless. *Kelley H.*, 263 Wis. 2d 241, ¶¶ 34–35, 41–42.

## II. STANDARD OF REVIEW

¶ 20. The two questions in this case—whether the summary judgment statute applies in TPR cases and whether a circuit court is statutorily required to advise a nonpetitioning party in a TPR case of his or her right to a continuance to consult with counsel about judicial substitution—are questions of law subject to de novo review. *Brandon S.S. v. Laura S.*, 179 Wis. 2d 114, 127, 507 N.W.2d 94 (1993).

## III. ANALYSIS

¶ 21. Parental rights termination adjudications are among the most consequential of judicial acts, involving as they do "the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768 (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28 (1996)). Termination of parental rights permanently extinguishes "all rights, powers, privileges, immunities, duties and obligations existing between parent and child." Wis. Stat. § 48.40(2).

¶ 22. A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The United States Supreme Court has described the fundamental nature of parental rights in this way:

14

It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." *Kovacs v. Cooper,* 336 U.S. 77, 95 (1949) (Frankfurter, J., concurring).

The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923), "basic civil rights of man," *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942), and "rights far more precious . . . than property rights," *May v. Anderson,* 345 U.S. 528, 533 (1953). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944).

*Stanley v. Illinois,* 405 U.S. 645, 651 (1972).

¶ 23. Thus, due process requires that "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky,* 455 U.S. at 753–54. These include the requirement of a hearing, *Stanley,* 405 U.S. at 649, and proof of parental unfitness by clear and convincing evidence, *Santosky,* 455 U.S. at 747–48.

¶ 24. Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights. *Sheboygan County DHHS v. Julie A.B.,* 2002 WI 95, ¶ 24, 255 Wis. 2d 170, 648 N.W.2d 402. In the first, or "grounds" phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination

of parental rights exist. Wis. Stat. § 48.31(1); *Waukesha County Dep't of Soc. Servs. v. C.E.W.,* 124 Wis. 2d 47, 60, 368 N.W.2d 47 (1985).

¶ 25. There are 12 statutory grounds of unfitness for termination of parental rights, *see* Wis. Stat. § 48.415(1)-(10), and if a petitioner proves one or more of the grounds for termination by clear and convincing evidence, "the court shall find the parent unfit." Wis. Stat. § 48.424(4); *Julie A.B.,* 255 Wis. 2d 170, ¶ 26. There are no "degrees of unfitness" under the statutory scheme; a court has no discretion to refrain from finding a parent unfit after all the elements of a statutory ground have been established. *Id.,* ¶¶ 36–37.

¶ 26. The consistent legislative objective throughout the Children's Code is "the best interests of the child." Wis. Stat. § 48.01(1). However, in TPR cases, the "best interests" standard does not "dominate every step of every proceeding." *Julie A.B.,* 255 Wis. 2d 170, ¶ 22. The best interests of the child do not "prevail" until the parent has been declared unfit after fact-finding by the court or jury at the grounds phase of the TPR proceeding. *Id.* A finding of parental unfitness is a necessary prerequisite to termination of parental rights, but a finding of unfitness does not necessitate that parental rights be terminated. Once the court has declared a parent unfit, the proceeding moves to the second, or dispositional phase, at which the child's best interests are paramount. *Id.,* ¶ 28.

¶ 27. At the dispositional phase, the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extin-

guished. Wis. Stat. § 48.426(2). "The outcome of this hearing is not predetermined, but the focus shifts to the interests of the child." *Julie A.B.*, 255 Wis. 2d 170, ¶ 28. In making this determination, which we have described as "'one of the most wrenching and agonizing in the law,'" the court "should welcome" any evidence relevant to the issue of disposition, including any "factors favorable to the parent," and must at a minimum consider the six "best interests" factors set forth in Wis. Stat. § 48.426(3). *Id.*, ¶ 29.

A. Summary judgment in TPR proceedings

¶ 28. We are concerned here with the "grounds" or "unfitness" phase of a TPR case, and specifically whether the use of summary judgment procedure under Wis. Stat. § 802.08 at this first phase of the proceeding violates the parent's rights under the TPR statutes or procedural due process. Kelley asserts that this question has already been answered by the court of appeals' decision in *Elizabeth W.*

¶ 29. *Elizabeth W.* involved a petition to terminate parental rights on grounds of abandonment and continuing need of protection or services. *Elizabeth W.*, 189 Wis. 2d at 434. The circuit court granted a motion for summary judgment against Elizabeth, having concluded that the affidavit and supporting documents filed by her attorney in opposition to the motion were nonevidentiary and insufficient to defeat the petitioner's motion. *Id.* at 435. After a dispositional hearing, the circuit court terminated Elizabeth's parental rights to her two children. *Id.*

¶ 30. The court of appeals reversed, broadly concluding that "summary judgment is inappropriate in TPR cases where a parent contests the termination." *Id.*

at 436. The court premised this conclusion on the principle that parental rights are fundamental liberty interests protected by the due process clause of the Fourteenth Amendment, and therefore any state action to terminate parental rights " 'must be accomplished by procedures meeting the requisites of the Due Process Clause.' " *Id.* at 436–37 (quoting *Santosky,* 455 U.S. at 753). The court stated that a hearing on the issue of unfitness is required by statute, Wis. Stat. §§ 48.422(2), 48.31(1), as well as by due process. *Id.* at 437. The court of appeals then concluded that:

> [A] TPR proceeding can never be without material issues of fact if a parent refuses to voluntarily terminate his or her right to the child. . . . By contesting the termination, a parent automatically raises the issue of whether he or she is a fit parent. This creates a genuine issue of material fact which cannot be disposed of by summary judgment.

*Id.* at 438.

¶ 31. The principles underlying the decision in *Elizabeth W.* were unquestionably sound and well-established; we conclude, however, that the court's holding was overbroad. Neither due process nor the TPR statutes require an absolute prohibition on summary judgment in the grounds or unfitness phase of a TPR proceeding. That a parent has contested the termination of his or her parental rights does not automatically mean there are material facts in dispute regarding the grounds for unfitness.

¶ 32. The code of civil procedure applies to "all civil actions and special proceedings" unless a "different procedure is prescribed by statute or rule." Wis. Stat. § 801.01(2). Parental rights termination proceedings under Chapter 48 are civil proceedings, and this general rule of civil procedure applicability has been cited in the

18

context of TPR cases on numerous occasions: *Evelyn C.R.*, 246 Wis. 2d 1, ¶ 17 (default judgment as a sanction for violation of a court order pursuant to Wis. Stat. §§ 802.10(7), 804.12(2)(a), and 805.03 is available in TPR proceedings; also, the harmless error rule of Wis. Stat. § 805.18(2) applies in TPR cases); *Brandon S.S.*, 179 Wis. 2d at 143–44, (citing the general rule that the civil procedure code governs Chapter 48 proceedings but concluding that the general intervention statute, Wis. Stat. § 803.09, conflicts with the exclusive procedure in Wis. Stat. § 48.42(2) for determining proper parties to a TPR proceeding); *Waukesha County DSS*, 124 Wis. 2d at 53, 66–70 (rules regarding jury instructions, preremptory strikes and summation pursuant to Wis. Stat. § 805.13(3), 805.08(3), and 805.10 apply in TPR proceedings); *Door County Dep't of Health & Family Servs. v. Scott S.*, 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999) (directed verdict pursuant to Wis. Stat. § 805.14(4) applies in TPR proceedings); *J.A.B. v. Waukesha County Human Servs. Dep't*, 153 Wis. 2d 761, 765, 451 N.W.2d 799 (Ct. App. 1989) (same).

¶ 33. There is nothing in the TPR statutes that explicitly or implicitly prohibits the use of summary judgment procedure under Wis. Stat. § 802.08 in the unfitness phase of a TPR case. Nor do the TPR statutes prescribe a procedure different from Wis. Stat. § 802.08 for TPR cases in which there is no genuine dispute of fact on the issue of unfitness under Wis. Stat. § 48.415. Kelley argues that a court order granting partial summary judgment on parental unfitness conflicts with the right to a jury trial at the fact-finding hearing, which she contends is an absolute right under the statutes,

19

Wis. Stat. §§ 48.422(3), (4), and 48.31(2), and as a matter of due process. We disagree.

¶ 34. The jury trial right at the fact-finding hearing in the unfitness phase of a TPR case is entirely statutory, not mandated by constitutional due process, and is therefore subject to the general provisions of the civil procedure code, including the provisions regarding summary judgment, Wis. Stat. § 802.08. A parent may, pursuant to Wis. Stat. § 48.422(4), request a jury for the fact-finding hearing, and the jury, if one is requested, makes findings of fact on the grounds for unfitness alleged in the TPR petition pursuant to Wis. Stat. § 48.31(3) and (4). The circuit court, however, is always responsible for conclusions of law, as is specifically recognized in the TPR statutes. *See* Wis. Stat. § 48.31(4). If a motion for summary judgment is made and supported as prescribed by Wis. Stat. § 802.08, the circuit court may properly conclude at the fact-finding hearing that there is no genuine issue of material fact in dispute and the moving party is entitled to partial summary judgment on parental unfitness as a matter of law. *See* Wis. Stat. § 802.08(2).

¶ 35. Summary judgment is a legal conclusion by the court, and, if carefully administered with due regard for the importance of the rights at stake and the applicable legal standards, is just as appropriate in the unfitness phase of a TPR case where the facts are undisputed as it is in any other type of civil action or proceeding which carries the right to a jury trial.[3]

---

[3] Article I, § 5 of the Wisconsin Constitution states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Kelley does not argue that she has a state constitutional right to a jury trial under art. I, § 5; in any event, no case has ever held that the summary judgment statute is

Summary judgment procedure requires notice, an opportunity to respond, and a hearing, and imposes on the moving party the burden of demonstrating both the absence of any genuine factual disputes and entitlement to judgment as a matter of law under the legal standards applicable to the claim. Wis. Stat. § 802.08(2) and (3).

¶ 36. In many TPR cases, the determination of parental unfitness will require the resolution of factual disputes by a court or jury at the fact-finding hearing, because the alleged grounds for unfitness involve the adjudication of parental conduct vis-à-vis the child. *See* Wis. Stat. § 48.415(1) (abandonment); Wis. Stat. § 48.415(2) (child in continuing need of protection or services); Wis. Stat. § 48.415(3) (continuing parental disability); Wis. Stat. § 48.415(5) (child abuse); Wis.

---

unconstitutional under art. I, § 5, that is, that summary judgment procedure violates the state constitutional jury trial right. The general statutory civil jury trial right is contained in Wis. Stat. § 805.01, and several other statutes confer the right to a jury in specific types of cases. *See, e.g.*, Wis. Stat. § 879.45 (probate code); Wis. Stat. § 767.50 (paternity); Wis. Stat. § 799.21 (small claims); Wis. Stat. § 345.43 (traffic code). No case has ever held that summary judgment procedure violates any of these statutory jury trial provisions (although it would be highly unusual for a party to attempt to invoke summary judgment in some of these very fact-intensive contexts.) Thus, while we certainly agree with the dissent's discussion of the importance of the jury trial as a check on government power, dissent, ¶ 66, we cannot agree that the careful application of the summary judgment statute imperils the civil jury trial right, whether constitutional or statutory. If summary judgment procedure does not impermissibly impair the state constitutional or statutory civil jury trial right in any other context, we know of no independent basis to hold that it impermissibly impairs the jury trial provisions of Wis. Stat. §§ 48.422(3), (4), and 48.31(2).

■■■■■■■■■■

■■■■■■■■■

Stat. § 48.415(6) (failure to assume parental responsi-
bility); Wis. Stat. § 48.415(7) (incestuous parenthood).
Summary judgment will ordinarily be inappropriate in
TPR cases premised on these fact-intensive grounds for
parental unfitness.

¶ 37. Some statutory grounds for unfitness, how-
ever, are expressly provable by official documentary
evidence, such as court orders or judgments of convic-
tion. *See* Wis. Stat. § 48.415(1m) (relinquishment, prov-
able by court order); Wis. Stat. § 48.415(4) (continuing
denial of periods of physical placement or visitation,
provable by court order); Wis. Stat. § 48.415(8) (homi-
cide or solicitation to commit homicide of parent, prov-
able by judgment of conviction); Wis. Stat. § 48.415(9)
(parenthood as a result of sexual assault, provable by
judgment of conviction); Wis. Stat. § 48.415(9m) (com-
mission of serious felony against one of the person's
children, provable by judgment of conviction); Wis.
Stat. § 48.415(10) (prior involuntary termination of
parental rights to another child, provable by court
order).[4] Some of these so-called "paper grounds" for
parental unfitness have been recently adopted, seri-
ously undermining the broad holding of *Elizabeth W.*

¶ 38. In 1995, the legislature enacted a new
ground for termination in cases of parenthood as a
result of sexual assault: Wis. Stat. § 48.415(9) provides
that conception as a result of sexual assault "may be
proved by a final judgment of conviction . . . indicating
that the person who may be the father of the child
committed, during a possible time of conception, a

---

[4] We do not mean to imply that the general categorization of
statutory grounds in this and the preceding paragraph repre-
sent a definitive statement about the propriety of summary
judgment in any particular case. The propriety of summary
judgment is determined case-by-case.

sexual assault as specified in this paragraph against the mother." Wis. Stat. § 48.415(9). Later in the same session, the legislature enacted two more new grounds for unfitness: commission of a serious felony against one of the parent's children, "as evidenced by a final judgment of conviction," *see* Wis. Stat. § 48.415(9m); and prior involuntary termination of parental rights to another child, provable by court order, *see* Wis. Stat. § 48.415(10).

¶ 39. Each of these newly-created grounds for involuntary termination of parental rights expressly provides that circuit court orders or judgments constitute proof of unfitness. Similarly, the ground for termination alleged in this case, continuing denial of periods of physical placement or visitation, is expressly provable by evidence of a court order. *See* Wis. Stat. § 48.415(4)(a) and (b). This evinces the legislature's manifest intent to enable unfitness determinations to conclusively flow from certain existing court orders that satisfy the statutory requirements. We fail to see how this intent is furthered by requiring the empanelment of a jury to receive evidence of the existence of a court order or judgment about which there is no dispute. The availability of partial summary judgment in the grounds phase of a TPR proceeding where the entire proof of unfitness under the statute is an undisputed court record furthers the legislature's purpose and is consistent with the general rule that the provisions of the code of civil procedure apply to all civil actions and proceedings.[5]

---

[5] The dissent concludes that the legislature intended the statutory jury trial right in TPR cases to be unconditional and absolute, essentially the equivalent of the jury trial right in criminal cases. Dissent, ¶¶ 75, 86. In the context of enacting a civil proceeding for the adjudication of alleged sexually violent

¶ 40. Kelley's argument that applying summary judgment at the unfitness phase of a TPR case violates due process is not well-developed. Its premise seems to be that there is a constitutional right to fact-finding by a jury in all TPR cases, even where the facts of unfitness are undisputed.[6] This appears also to be the premise of *Elizabeth W.,* although the court of appeals did not apply the Supreme Court's three-part test for determining what process is constitutionally due in TPR cases. In *Santosky,* the Supreme Court held:

> [T]he nature of the process due in parental rights termination proceedings turns on a balancing of the "three distinct factors" specified in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): the private interest affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting the use of the challenged procedure.

*Santosky,* 455 U.S. at 754.

¶ 41. Applying this test here, we reiterate that the private interest affected by a TPR proceeding is un-

___

persons, the legislature has expressed itself quite explicitly in creating the statutory equivalent of a criminal jury trial right in a civil proceeding. *See* Wis. Stat. §§ 980.03, 980.05(1m). If the legislature had intended to enact a right to a jury trial in TPR cases that is the equivalent of a constitutional criminal jury trial right, it would have expressly said so, as it did in Chapter 980.

[6] Kelley's constitutional argument is grounded in procedural due process. She does not mount a facial or as-applied substantive due process challenge to the statutory ground for unfitness invoked in her case, Wis. Stat. § 48.415(4). This difference distinguishes this case from *Monroe County Department of Human Services v. Kelli B.,* 2004 WI 48, 271 Wis. 2d 51, 678 N.W.2d 831, another termination of parental rights case also mandated this date.

questionably very strong. However, the remaining two factors in the three-factor test weigh heavily against a conclusion that a jury trial is constitutionally required in TPR cases.

¶ 42. The risk of error in applying partial summary judgment at the grounds phase of a TPR proceeding where the facts of unfitness are undisputed is extremely low. The grounds for unfitness most likely to form the basis of a successful motion for partial summary judgment in a TPR case are those that are sustainable on proof of court order or judgment of conviction, the reliability of which is generally readily apparent and conceded. Furthermore, as we have noted, a finding of unfitness is only the first of two steps in the process. A finding of unfitness—whether on fact-finding by the court or jury where the facts are disputed or on partial summary judgment where the facts are undisputed—does not mandate termination of parental rights, nor does it foreclose the parent's opportunity to present evidence and argue against termination at the dispositional hearing.

¶ 43. Finally, the countervailing governmental interest in avoiding pointless jury trials where there is nothing to try is substantial. Jury trials are expensive and time-consuming. Parental rights termination cases generally require the participation of at least three publicly-financed attorneys (the guardian ad litem, and the attorneys for the county and the parent), as well as the circuit court judge, court staff, and jurors. *Elizabeth W.'s* bright-line prohibition of summary judgment in TPR cases appears to require the empanelment of a jury to listen to evidence even when it is a foregone conclusion that a directed verdict is the only possible outcome. To mandate a jury trial where the parent does

not dispute the facts regarding unfitness alleged in the petition is a complete waste of judicial resources.

¶ 44. Accordingly, although the private interest at stake is fundamental, we conclude that due process does not mandate a jury trial in the unfitness phase of a TPR case. The jury trial right in TPR cases is statutory only, and is therefore subject to the provisions of the code of civil procedure, including summary judgment procedure as specified in Wis. Stat. § 802.08. Due process requires a hearing, *Stanley*, 405 U.S. at 649, and clear and convincing proof of unfitness, *Santosky*, 455 U.S. at 747–48, and summary judgment procedure under Wis. Stat. § 802.08 accommodates both. *Elizabeth W.*'s broad prohibition against the use of summary judgment in the unfitness phase of a TPR case was statutorily and constitutionally unwarranted, and we therefore overrule it.[7]

---

[7] Our research into the use of summary judgment in TPR cases in other states has revealed no particular trend; several states permit summary judgment at the grounds phase of a TPR proceeding, several do not, and many seem not to have addressed the question. For instance, the Supreme Court of Wyoming has held that summary judgment is available in TPR cases on a case-by-case basis, provided that the parties are granted a hearing on the motion. *In re the Adoption of JLP,* 774 P.2d 624, 629 (Wyo. 1989). The Illinois Court of Appeals has upheld the grant of summary judgment in a TPR case in which the ground for termination was criminal conviction resulting from the death of a child by physical abuse. *State v. Ray,* 411 N.E.2d 88, 92 (Ill. Ct. App. 1980). Similarly, the Court of Appeals of New Mexico has held that "summary judgment is a procedure which may be used to terminate parental rights where there are no issues of fact underlying the basis for termination." *State ex rel. Children, Youth and Families Dep't in re T.C. and D.C.,* 881 P.2d 712, 713 (Ct. App. N.Mex. 1994).

¶ 45. We also conclude that partial summary judgment was properly granted in this case. The guardian ad litem's motion was presented, somewhat irregularly, as "Motion for Summary Judgment or in the Alternative Directed Verdict," but the motion was legally sufficient as a motion for summary judgment, and was accompanied by an affidavit of the guardian ad litem attaching the unmodified Brown County Circuit Court order denying Kelley placement, and visitation. Kelley was given an opportunity to respond to the motion. She filed a written response, which the court considered and discussed with the parties at the October 15, 2001, hearing. Judge VanDeHey postponed ruling on the

---

Those states that have rejected summary judgment in TPR proceedings have done so for reasons that do not find a parallel in Wisconsin law. For instance, the Supreme Court of Oklahoma has prohibited the use of summary judgment in termination proceedings on the assumption that if summary judgment were available, the parties would not have the right to a hearing. *In re Christina T.,* 590 P.2d 189, 191 (Okla. 1979). In contrast, Wisconsin's summary judgment rule mandates a hearing on the motion. The North Carolina Court of Appeals has held that summary judgment is not permitted in termination proceedings because the exclusive procedural scheme for parental rights terminations could not be supplemented by provisions in the general civil code. *Curtis v. Curtis,* 410 S.E.2d 917, 919 (N.C. Ct. App. 1991). The general rule in Wisconsin, however, is that the civil procedure code applies to all civil actions, including TPR cases, unless a different procedure is prescribed. *See* Wis. Stat. § 801.01(2). The California Court of Appeals has also ruled out the use of summary judgment in termination proceedings, but it did so after finding that summary judgment would upset the time periods required by the termination statutes. *Dep't of Soc. Servs. v. Harold K.,* 205 Cal. Rptr. 393, 397–98 (Cal. Ct. App. 1984). Application of Wisconsin's summary judgment rule to TPR cases does not suffer from the same infirmity.

27

motion until the November 2, 2001, hearing, at which Kelley was present, represented by counsel, and was again given an opportunity to be heard.

¶ 46. At the November 2 hearing, Kelley conceded that there was no dispute of fact regarding the grounds alleged in the petition—that she had been denied physical placement and visitation by court order and that the court order had remained in effect, unmodified, for more than one year. The circuit court took judicial notice of the Brown County Circuit Court order and concluded that it satisfied the statutory elements necessary for unfitness under Wis. Stat. § 48.415(4). Although the written order that was entered after the hearing used the terminology of a directed verdict, we conclude it is sufficient as an order granting partial summary judgment of unfitness.

■

¶ 47. ·Kelley makes a fallback argument that summary judgment was inappropriate because she was entitled to present evidence regarding her reasons for having failed to comply with the conditions for re-establishing visitation set forth in the Brown County judgment. She cites *State v. Fredrick H.*, 2001 WI App 141, 246 Wis. 2d 215, 630 N.W.2d 734, in which the court of appeals held that such evidence was relevant at the grounds phase of a TPR proceeding, and, further, that a circuit court's refusal to allow such evidence at the grounds phase deprived the parents of the right "to meaningfully participate in the termination proceedings." *Id.*, ¶ 13.

¶ 48. *Fredrick H.* is no longer valid in light of our decision in *Julie A.B.* The court in *Fredrick H.* relied on language from *B.L.J. v. Polk County Dep't of Soc. Servs.*, 163 Wis. 2d 90, 470 N.W.2d 914 (1991), which described the unfitness phase of a TPR proceeding as encompass-

ing an intermediate determination by the circuit court regarding whether the degree of parental unfitness was sufficient to warrant termination of parental rights. *Frederick H.*, 246 Wis. 2d 215, ¶ 14 (quoting *B.L.J.*, 163 Wis. 2d at 104). The court in *Frederick H.* held that mitigating evidence regarding parental efforts to regain visitation was relevant to this discretionary determination regarding the degree of parental unfitness. *Id.*, ¶¶ 15–17. However, in *Julie A.B.*, we expressly withdrew the language from *B.L.J.* that imposed this intermediate degree-of-unfitness determination. *Julie A.B.*, 255 Wis. 2d 17, ¶¶ 36–37. *Frederick H.* is thus inconsistent with *Julie A.B.*, and we therefore overrule it.[8]

---

[8] The dissent asserts that although *Sheboygan County DHHS v. Julie A.B.*, 2002 WI 95, 255 Wis. 2d 170, 648 N.W.2d 402, eliminated the intermediate "degree-of-unfitness" determination, there may nonetheless be "defenses" or "explanations" for some of the grounds of parental unfitness that ought to be considered in the grounds phase of the TPR proceeding. Dissent, ¶ 97. If the applicable statutory basis for unfitness indeed provides for a "defense" or "explanation" that would preclude a finding of unfitness, and there are material facts in dispute regarding a parent's asserted "defense" in this regard, then summary judgment will not be appropriate. Here, however, the applicable statutory ground for unfitness—denial of physical placement and visitation by court order for more than one year pursuant to Wis. Stat. § 48.415(4)—does not provide for a defense based upon a parent's explanation for noncompliance with the court order. Accordingly, the circuit court correctly concluded that while Kelley H.'s explanation for having failed to comply with the court-ordered conditions for re-establishing visitation was highly relevant at the dispositional phase of the TPR proceeding, it was not relevant at the grounds phase.

## B. Continuance to Consult on Substitution of Judge

¶ 49. Kelley also contends she is entitled to a new hearing because the circuit court failed to inform her, at the initial hearing, that she had a right under Wis. Stat. § 48.422(5) to a continuance to consult with counsel regarding substitution of judge. Kelley relies on *Burnett County Dep't of Soc. Servs. v. Kimberly M.W.,* 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994), which in turn relied on language in *M.W. and I.W.,* 116 Wis. 2d at 441, which appears to impose such a duty on the circuit courts.

¶ 50. Parties to TPR proceedings may request a continuance of the initial hearing to consult with counsel about judicial substitution. Wis. Stat. § 48.422(5). However, the circuit court does not have an affirmative duty to advise parties of this right. Wis. Stat. § 48.422(1).

¶ 51. As is pertinent here, Wis. Stat. § 48.422 provides:

Hearing on the petition. (1) . . . At the hearing on the petition to terminate parental rights the court shall determine whether any party wishes to contest the petition and inform the parties of their rights under sub. (4) and s. 48.423 [relating to persons alleging their paternity].

. . . .

(4) Any party who is necessary to the proceeding or whose rights may be affected by an order terminating parental rights shall be granted a jury trial upon request if the request is made before the end of the initial hearing on the petition.

(5) Any nonpetitioning party, including the child, shall be granted a continuance of the hearing for the purpose

of consulting with an attorney on the request for a jury trial or concerning a request for the substitution of a judge.

Wis. Stat. § 48.422. In *M.W. and I.W.*, this court broadly construed Wis. Stat. § 48.422 as follows:

> The statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver; and, in any case, the trial court has the duty to make a full explication of the statutory rights — the right to representation, the right to a continuance, the right to request a jury trial, and the right to request a substitution of judge.

*M.W. and I.W.*, 116 Wis. 2d at 441.

¶ 52. *M.W. and I.W.* was mistaken that the statute is unequivocal in this regard. In fact, as Court of Appeals Judge Lundsten noted in his concurrence in this case, the statute unequivocally does *not* direct the circuit court to inform parties of the right to a continuance to consult with counsel regarding judicial substitution. *Kelley H.*, 263 Wis. 2d 241, ¶ 48. *M.W. and I.W.* did not purport to impose such a duty as a constitutional requirement or as a matter of judicial administration. We withdraw this language from *M.W. and I.W.;* the circuit court does not have a statutory duty to inform a party in a TPR case of the right to a continuance to consult with counsel about judicial substitution.[9] The circuit court's failure to do so here was not error.

---

[9] As we have noted, Kelley relied for this argument on *Burnett County Dep't of Soc. Servs. v. Kimberly M.W.*, 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994), in which the court of appeals followed *M.W. and I.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 342 N.W.2d 410 (1984), and

¶ 53. Accordingly, for the foregoing reasons, we conclude that partial summary judgment may be granted in the unfitness phase of a TPR case where the moving party establishes that there is no genuine issue of material fact regarding the asserted grounds for unfitness under Wis. Stat. § 48.415, and, taking into consideration the heightened burden of proof specified in Wis. Stat. § 48.31(1) and required by due process, the moving party is entitled to judgment as a matter of law. We further conclude that Wis. Stat. § 48.422(1) does not impose upon the circuit court a duty to advise parties of the right under Wis. Stat. § 48.422(5) to a continuance to consult with counsel regarding judicial substitution.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 54. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the majority opinion. I write separately, however, to express my concern about the current statutory scheme for involuntary terminations of parental rights. Because there may be situations when one of the grounds for termination is met, but the facts themselves do not indicate parental unfitness, I write separately.

¶ 55. In *Sheboygan County Department of Health & Human Services v. Julie A.B.*, 2002 WI 95, ¶¶ 24–28, 255 Wis. 2d 170, 648 N.W.2d 402, this court clarified that a termination proceeding is a two-step process rather than a three-step process as two prior cases had

---

imported the procedure of *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), for determining whether the failure to provide the continuance warning was reversible error. Because it was premised on the overbroad language of *M.W. and I.W.*, which we have now withdrawn, we overrule *Kimberly M.W.*

determined.[1] Specifically, we concluded that the legislature did not contemplate an intermediate step at which the circuit court decides, after the fact-finder has found that a ground exists, whether the parent's unfitness is egregious enough to warrant termination.[2] We explained that " '[i]f grounds for the termination of parental rights are found by the court or jury, the court *shall* find the parent unfit.' Wis. Stat. § 48.424(4)."[3]

¶ 56. Our decision in *Julie A.B.* was the correct one under the statutory scheme. The problem with the statutory scheme, however, becomes exceedingly clear in the present case. Here, the petition alleged that Kelley had been denied physical placement and visitation by court order for more than one year pursuant to Wis. Stat. § 48.415(4).[4] As the dissent recognizes, there may be reasons a court did not modify the order denying placement and visitation, including serious illness, temporary incarceration, or involuntary absence from the jurisdiction, or a judge's illness or death.[5] These reasons, however, cannot currently be considered to defeat the determination of unfitness once a ground has been found.[6]

---

[1] The two prior cases were *B.L.J. v. Polk County Department of Social Services,* 163 Wis. 2d 90, 470 N.W.2d 914 (1991), and *State v. Kelly S.,* 2001 WI App 193, 247 Wis. 2d 144, 634 N.W.2d 120.

[2] *Sheboygan County Dep't of Health and Human Servs. v. Julie A.B.,* 2002 WI 95, ¶ 36, 255 Wis. 2d 170, 648 N.W.2d 402.

[3] *Id.,* ¶ 26.

[4] Majority op., ¶ 2.

[5] Dissent, ¶ 97.

[6] *See* Wis. Stat. § 48.424(4).

¶ 57. In certain cases, a parent will be able to raise his or her legitimate explanation about why his or her conduct does not constitute unfitness by means of a constitutional challenge. In those cases where the legislative scheme seems to bypass any meaningful determination of unfitness, the petitioner can assert that the statutory ground for unfitness is not sufficiently narrowly tailored to meet the constitutional standards. *See Monroe County Dep't of Human Servs. v. Kelli B.*, 2004 WI 48, 271 Wis. 2d 51, 678 N.W.2d 831.

¶ 58. Mounting a constitutional challenge is not, however, easily accomplished given the presumption of constitutionality and the burden of proof.[7] Other cases, which may not rise to the level of a constitutional challenge, seem to cry out for relief. A parent who has a legitimate explanation about why his or her conduct does not constitute unfitness in fact should be heard before a circuit court declares that parent unfit.

¶ 59. The majority here encourages parents to raise in the dispositional stage their explanations as to why their conduct does not make them in fact unfit. Yet given the fundamental liberty interest involved, I am concerned that raising the legitimate explanation in the dispositional stage provides an inadequate safeguard. At the dispositional stage, the best interests of the child serves as the "polestar" for the court.[8] Although a court may consider factors favorable to a parent, it is only required to consider the six factors set forth in Wis.

[7] *See Winnebago County Dep't of Social Servs. v. Darrell A.*, 194 Wis. 2d 627, 637, 534 N.W.2d 907 (Ct. App. 1995); *State v. Thiel*, 188 Wis. 2d 695, 706, 524 N.W.2d 641 (Ct. App. 1993).

[8] *Julie A.B.*, 255 Wis. 2d 170, ¶ 4.

Stat. § 48.426(3).[9] Significantly, not one of these factors addresses a parent's explanation.

¶ 60. Given the significance of termination proceedings for parents, children, and society, I believe that the legislature should revisit the statutory scheme to ensure the legitimacy and constitutionality of the process. Accordingly, I urge the law revision committee and the revisor of statutes to exercise their statutory duties under Wis. Stat. § 13.83(1) and § 13.93(2)(d) and examine the statutes, as they are, in my opinion, in need of revision.

¶ 61. For the reasons set forth, I write separately.

¶ 62. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶ 63. DAVID T. PROSSER, J. (*dissenting*). Last term I expressed concern that summary judgments

---

[9] *See id.,* ¶ 29. Wisconsin Stat. § 48.426(3) states:

(3) FACTORS. In considering the best interests of the child under this section the court shall consider but not be limited to the following:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

35

were eating into the constitutional right of trial by jury in civil cases. *Trinity Evangelical v. Tower Ins. Co.,* 2003 WI 46, ¶¶ 71–86, 261 Wis. 2d 333, 661 N.W.2d 789 (Prosser, J., dissenting). The decision prompting this concern involved an insurance company that was accused of acting in bad faith toward its insured. The circuit court granted summary judgment to the insured, finding that the insurer was liable to the insured as a matter of law. The court found that every element of the tort of bad faith was established beyond dispute without the need for a trial. Thus, the court denied the insurer the right to a jury's determination of the facts, reserving for jury determination only the issue of damages. After receiving the court's instructions, the jury awarded the insured the staggering sum of $3.5 million in punitive damages. This court upheld the award and all the procedures leading up to it.

¶ 64. The present case heightens my apprehension because it involves more than a suit among private parties over money. It involves a government effort to terminate a mother's rights to her child. The type of proceeding, the nature of the parties, and the potential stakes all are different. Once again, however, this court strips a defendant of the right of trial by jury—this time, a right granted by statute—by asserting that there is simply no disputed issue of fact for a jury to decide. As the court sees it, convening an "expensive and time-consuming" jury of citizens from the community to assess whether a mother is "unfit," before the judge decides whether to terminate her parental rights, would serve no purpose. *See* Majority op., ¶ 43. In short, a jury trial would be "pointless." *Id.*

¶ 65. The founders of our Nation believed that "trial of fact by juries rather than by judges was an essential bulwark of civil liberty." *Galloway v. United*

36

*States,* 319 U.S. 372, 397 (1943) (Black, J., dissenting).[1] Justice Black anticipated the tension in this case when he observed that either a judge or a jury must decide facts and "to the extent that we [in the judiciary] take this responsibility, we lessen the jury function." *Id.* at 407. The judicial duty to preserve the right of trial by jury "may be peculiarly difficult, for here it is our own power which we must restrain." *Id.*

¶ 66. The majority opinion speaks of the low risk of error in some judicial fact-finding and the "complete waste of judicial resources" in the jury trial requested here. Majority op., ¶¶ 42–43. But it fails to recognize that trial by jury is intended to protect civil litigants from overreaching and abuse by officials in all three branches of government, not just the judiciary. The American jury represents a classic check on government power. Hence, "the jury is not controlling merely the immediate case before it, but the host of cases not before it which are destined to be disposed of by the pre-trial process. . . . [T]he jury, like the visible cap of an iceberg, exposes but a fraction of its true volume." Harry Kalven, Jr. & Hans Zeisel, *The American Jury,* 31–32 (1966).

¶ 67. The decision in this case undermines a basic right crafted by the legislature. In curtailing this right, the court will impact the dynamics of termination proceedings in ways that are not yet fully apparent.[2] It

---

[1] Justice Black quoted Thomas Jefferson as saying: "I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." *Galloway v. United States,* 319 U.S. 372, 397 (quoting 3 *Writings of Thomas Jefferson* (Washington ed.) 71).

[2] Chief Justice Abrahamson has removed any doubt about one of the ways the dynamics will change. Concurring op., ¶¶ 56–57. The judiciary's evisceration of the right of trial by

may impair the legitimate interests of parents and complicate the operation of the termination law. Because I believe the court is making a serious mistake, I respectfully dissent.

I

¶ 68. Chapter 48—the Children's Code—addresses a wide range of matters affecting children. In the subchapter on procedure, Wis. Stat. § 48.31 establishes fact-finding hearings (1) to determine if the allegations in a petition for children alleged to be in need of protection or services under Wis. Stat. § 48.13 are proved by clear and convincing evidence; (2) to determine if the allegations in a petition for unborn children alleged to be in need of protection or services under Wis. Stat. § 48.133 are proved by clear and convincing evidence; and (3) to determine if the allegations in a petition to terminate parental rights are proved by clear and convincing evidence.

¶ 69. Subsection (2) of § 48.31 then reads:

> (2) The hearing shall be to the court *unless* the child, *the child's parent,* guardian, or legal custodian, the unborn child by the unborn child's guardian ad litem, or the expectant mother of the unborn child *exercises the right to a jury trial by demanding a jury trial* at any time before or during the plea hearing.

Wis. Stat. § 48.31(2) (emphasis added).

¶ 70. This provision permits either a parent or a child or a child's representative to *demand* a jury trial in a termination proceeding. The legislature's intent in § 48.31(2) is reinforced in Wis. Stat. § 48.422(4), which

jury will encourage parents to launch constitutional challenges against the termination statute.

reads: "Any party who is necessary to the proceeding or whose rights may be affected by an order terminating parental rights *shall be granted a jury trial upon request* if the request is made before the end of the initial hearing on the petition." Wis. Stat. § 48.422(4) (emphasis added). The circuit court is *required* to inform the parties of this right. Wis. Stat. § 48.422(1).

¶ 71. Subsection (2) of § 48.31 continues:

> If a jury trial is demanded in a proceeding under s. 48.13 or 48.133, the jury shall consist of 6 persons. If a jury trial is demanded in a proceeding under s. 48.42 [petition for termination of parental rights], the jury shall consist of 12 persons unless the parties agree to a lesser number.

¶ 72. This language makes plain that while the legislature considers each of the three fact-finding hearings significant, it considers the fact-finding hearing on a termination petition to be more significant than a hearing under § 48.13 because the jury in the termination hearing is a jury of 12 persons, not 6 persons.

¶ 73. Subsection (2) adds that "At the conclusion of the hearing, the court or jury shall make a determination of the facts . . . ." Subsection (4) of § 48.31 thereafter provides:

> The court or jury shall make findings of fact and the court shall make conclusions of law relating to the allegations of a petition filed under s. 48.13, 48.133 or 48.42, except that the court shall make findings of fact relating to whether the child or unborn child is in need of protection or services which can be ordered by the court.

The jury's fact-finding duties are also alluded to in Wis. Stat. §§ 48.415 (introduction) and 48.424(3) and (4).

¶ 74. Subsection (4) of § 48.31 and subsection (3) of § 48.424 outline situations in which the court plays an exclusive role in termination proceedings. Judicial authority to deny a party a jury trial because the court believes that grounds exist for a partial summary judgment is not mentioned in these statutes.

¶ 75. The legislature's intent in these statutes is not ambiguous. The legislature intends to afford affected parties in termination cases the same right to a jury trial as defendants in criminal cases. The fact that parents may demand a jury trial on the issue of their "fitness" does not mean that they will always exercise this right. It means that officials seeking termination are likely to be more cautious in their approach and more thorough in making the case than they would be if they didn't have to deal with people who are not part of the courthouse establishment.

## II

¶ 76. Jury trials in Wisconsin child custody cases date back more than a century. *See* Chapter 90, Laws of 1901 ("An act to regulate the treatment and control of dependent, neglected and delinquent children in counties having over one hundred and fifty thousand population."). After defining "dependent child," "neglected child," and "delinquent child" in Section 1, the legislature asserted in Section 2 that:

> In all trials under this act of any dependent or delinquent child, any person interested therein may demand a jury of six, or the judge of his own motion may order a jury of the same number to try the case. Such jury when demanded or ordered shall be obtained in the manner provided in chapter 194 of the Wisconsin statutes of 1898 and the provisions of sections 4750 to

4758, both inclusive, of said chapter 194, shall be applicable to all such trials.

§ 2, ch. 90, Laws of 1901.

¶ 77. This early provision evolved over time. Since 1901, however, our legislature has always conferred a right to demand trial by jury in certain cases involving the custody and control of children. Historically, this right predates the appearance of summary judgment in Wisconsin law.

¶ 78. The first summary judgment rule was adopted by Supreme Court Order in 1931. *See In the Matter of the Promulgation of Rules Relating to Pleading, Practice and Procedure in the Courts of the State of Wisconsin,* 204 Wis. viii, creating Wis. Stat. § 270.635. This rule was quite limited in scope. Some 45 years later, on January 1, 1976, this court replaced a modified § 270.635 with Wis. Stat. § 802.08, as part of the Wisconsin Rules of Civil Procedure. 67 Wis. 2d 585, 630–31 (1975).

¶ 79. As part of the same rule-making process, the court adopted Wis. Stat. § 801.01(2), which read:

> (2) Scope. The sections in this title govern procedure and practice in circuit and county courts of the state of Wisconsin in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin *except where different procedure is prescribed by statute or rule.* They shall be construed to secure the just, speedy and inexpensive determination of every action.

67 Wis. 2d at 588 (emphasis added). This latter provision is the court-made rule the majority relies on to apply summary judgment to § 48.31 fact-finding proceedings. Essentially, the majority is saying that the civil procedure code, including summary judgment,

applies to all civil actions except those for which a different procedure is prescribed by statute. A proceeding to establish a ground for termination in a TPR case is a civil action, and it does not prescribe an exception for summary judgment. Therefore, summary judgment applies in a proceeding to establish a ground for termination of parental rights.

¶ 80. There are several difficulties with this conclusion. First, because Wis. Stat. §§ 48.31(2) and 48.422(4) establish a right to *demand* a trial by jury, they arguably prescribe, "by statute," "a different procedure" from summary judgment.

¶ 81. It must be acknowledged that Wis. Stat. § 805.01(2) also uses the word "demand"—any "party entitled to a trial by jury . . . may demand a trial in the mode to which entitled"—and this "demand" language has not prevented summary judgment in the typical civil case. However, the language in § 805.01 has a history very different from the language in Wis. Stat. § 48.31. The language in § 805.01 was lifted from Rule 38 of the Federal Rules of Civil Procedure, which was drafted long after the "demand" language in § 48.31(2). There is something quite disconcerting about borrowing the interpretation of one statute to nullify a longstanding right in another statute.

¶ 82. Second, the Judicial Council Committee's Note to Wis. Stat. § 801.01, prepared shortly before the rule's promulgation, offers an interpretation of the rule that is different from the interpretation provided by the majority. The Note explains that the statutes contained in chapters 801 through 807 are general in their application to civil actions and govern all matters of practice and procedure "except to the extent that contrary

42

provisions otherwise provide." *Wisconsin Rules of Civil Procedure,* 67 Wis. 2d 589 (1976). Thus, the Note explains:

> they are subject to the special rules applicable to actions affecting marriage under ch. 247, small claims actions under ch. 299, actions to recover forfeitures under ch. 288, illegitimacy proceedings under ch. 52, probate proceedings under chs. 851–879, provisional and extraordinary remedies under chs. 264–268 and *any other special rule governing particular kinds of actions or special proceedings.*

*Id.* (emphasis added).

¶ 83. The exceptions cited in the Judicial Council Committee's Note should be compared to the majority's analysis in ¶ 35, n.3.[3] The chapter numbers have changed over the past quarter century but there is considerable overlap in the subject areas. Consequently, the majority's analysis appears to conflict with the Judicial Council Committee's Note.

¶ 84. Chapter 48 proceedings are not specifically mentioned in the Judicial Council Committee's Note. However, fact-finding proceedings under Chapter 48—which at the time of adoption of the Wisconsin Rules of Civil Procedure included proceedings to determine "delinquency"—obviously have special rules. Juvenile

---

[3] The majority states in ¶ 35, n.3 that:

The general statutory civil jury trial right is contained in Wis. Stat. § 805.01, and several other statutes confer the right to a jury in specific types of cases. *See,* e.g., Wis. Stat. § 879.45 (probate code); Wis. Stat. § 767.50 (paternity); Wis. Stat. § 799.21 (small claims); Wis. Stat. § 345.43 (traffic code). No case has ever held that summary judgment procedure violates any of these statutory jury trial provisions (although it would be highly unusual for a party to attempt to invoke summary judgment in some of these very fact-intensive contexts).

delinquency proceedings and termination proceedings are "special proceedings."[4] They are not the same as general civil actions and thus implicate "any other special rule governing particular kinds of actions." *Wisconsin Rules of Civil Procedure,* 67 Wis. 2d 589.

¶ 85. Finally, this court adopted Wis. Stat. §§ 801.01 (scope of chs. 801–847) and 802.08 (summary judgment) "pursuant to its inherent authority and sec. 251.18, Stats." Preface to *Wisconsin Rules of Civil Procedure,* 67 Wis. 2d 585. Wisconsin Stat. § 251.18 in 1975 and Wis. Stat. § 751.12 now are the statutes that have authorized this court to promulgate rules of pleading, practice, and procedure. They both contain the admonition that court-made rules *"shall not abridge,* enlarge, *or modify the substantive rights of any litigant."* This raises the question whether a legislatively conferred right of trial by jury is a substantive right. If it is, then this court may not abridge that right by rule. If it is not, then this court has been given the awesome power to abolish the right of trial by jury by rule in *any* situation in which the right is not protected by the state or federal constitution.

¶ 86. It would be ill advised for this court to embrace the premise that its court-made rule wipes out an unconditional legislatively established right of trial by jury in termination cases whenever a judge finds that there is no issue of material fact concerning an alleged statutory ground for termination. Arguably, the legislature authorized a jury to determine whether a

---

[4] In *Lueptow v. Schraeder,* 226 Wis. 437, 443–45, 277 N.W. 124 (1938), the court said: "The proceedings authorized by ch. 48, Stats., are new in this state. . . . In our view, [a delinquency] proceeding, strictly speaking, is neither a criminal nor a civil action. *It is a special proceeding* with certain incidents common to both civil and criminal actions." (Emphasis added.)

statutory ground for unfitness exists so that no judge could unilaterally terminate a parent's rights.

## III

¶ 87. The majority opinion minimizes my concern that the statutory right of jury trial in termination cases has been impaired by emphasizing that summary judgments are available only "where the requirements of the summary judgment statute and the applicable legal standards in Wis. Stat. §§ 48.415 and 48.31 have been met." Majority op., ¶ 5. "Accordingly, partial summary judgment may be granted in the unfitness phase of a TPR case where the moving party establishes that there is no genuine issue as to any material fact regarding the asserted grounds for unfitness under Wis. Stat. § 48.415, and . . . the moving party is entitled to judgment as a mater of law." *Id.*, ¶ 6.

¶ 88. The majority explains that there are now 12 grounds of unfitness in § 48.415 for the termination of parental rights, "and several of these may be proved by official documentary evidence." *Id.*, ¶ 3. The majority cites the following:

 a. 48.415(1m)—relinquishment;

 b. 48.415(4)—continuing denial of periods of physical placement or visitation;

 c. 48.415(8)—homicide or solicitation to commit homicide of parent;

 d. 48.415(9)—parenthood as a result of sexual assault;

 e. 48.415(9m)—commission of serious felony against one of the person's children;

45

f. 48.415(10)—prior involuntary termination of parental rights to another child.

*Id.,* ¶ 37.

¶ 89. Significantly, the court has listed half the grounds of unfitness as being subject to potential summary judgment because they may be proved by official documentary evidence. However, in some cases, child abuse under § 48.415(5) and incestuous parenthood under § 48.415(7) may also be proved by documentary evidence.[5] Therefore, at least two-thirds of the grounds of unfitness may be determined without a jury trial. In fact, the majority implies that summary judgment may be granted, where appropriate, on a case-by-case basis, irrespective of the grounds. Majority op., ¶ 37, n.4. It overrules *Walworth County Department of Human Services v. Elizabeth W.,* 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994), a case in which the court of appeals disapproved summary judgment for the grounds of abandonment and continuing need of protection or services, neither of which is a candidate for summary judgment on the majority's list.

¶ 90. One consequence of this is that the party initially petitioning for termination of parental rights —sometimes the child's other parent—may deliberately choose a ground of unfitness that will maximize the chances of avoiding a jury trial.

¶ 91. This is not the only problem the court has created. A termination of parental rights proceeding is frequently preceded by a CHIPS proceeding pursuant

---

[5] Initially, the circuit court granted summary judgment on incestuous parenthood grounds in *Monroe County Department of Human Services v. Kelli B.,* 2003 WI App 88, ¶ 5, 263 Wis. 2d 413, 662 N.W.2d 360, *aff'd* 2004 WI 48, 271 Wis. 2d 51, 678 N.W.2d 831.

to Wis. Stat. § 48.13 as well as a disposition hearing under Wis. Stat. § 48.335. At the CHIPS fact-finding hearing, the parent is entitled to a jury trial. Wis. Stat. § 48.243(1)(g). Often, however, the parent does not contest the child's need for protection or services because the parent is overwhelmed with personal problems and needs time to recover. Now, however, because failure to contest a petition at the CHIPS fact-finding hearing may eliminate the chance for a parent ever to present testimonial evidence on the issue of the parent's unfitness, there will be an incentive for the parent to contest the initial CHIPS proceeding. In any event, the court may employ summary judgment at the CHIPS fact-finding hearing. *N.Q. v. Milwaukee County Dep't of Social Servs.,* 162 Wis. 2d 607, 611–12, 470 N.W.2d 1 (1991).

¶ 92. At the CHIPS disposition hearing, there is no requirement of proof by clear and convincing evidence. *S.D.S. and K.A.S. v. Rock County Dep't of Soc. Services,* 152 Wis. 2d 345, 356–57, 448 N.W.2d 282 (Ct. App. 1989). Rather, because CHIPS dispositional hearings "emphasize the child's future well-being and family values, not culpability," the greater weight of the credible evidence standard applies. *Id.* at 357.

¶ 93. What this means is that the predicate fact-finding leading up to an involuntary termination proceeding may be based upon a waiver, or summary judgment, or a reduced burden of proof.

¶ 94. In this case, a judge in Brown County conducted a CHIPS fact-finding hearing and a CHIPS dispositional hearing. The dispositional hearing had a reduced burden of proof. The child's father later petitioned in Grant County for a termination of the mother's rights on the ground set out in § 48.415(4)

(continuing denial of periods of physical placement or visitation). Subsection (4) reads:

> (4) Continuing Denial of Periods of Physical Placement or Visitation. Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

> (a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. *48.345, 48.363, 48.365,* 938.345, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).

> (b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

Wis. Stat. § 48.415(4) (emphasis added). Wisconsin Stat. §§ 48.345, 48.363, and 48.365 involve *dispositional* hearings with a reduced burden of proof.

¶ 95. In this case, Kelley H. was denied physical placement and denied visitation of her son by court order. At least one year elapsed from the date the order was issued and the court had not modified the order so as to permit periods of physical placement or visitation.

¶ 96. The Grant County Circuit Court would not permit Kelley H. to explain, at the fact-finding hearing on unfitness, why at least one year had elapsed since the order denying periods of physical placement or visitation was issued and why the court had not subsequently modified its order so as to permit periods of physical placement or visitation. That evidence could not come in, the court said, until the dispositional hearing. *See* Majority op., ¶¶ 15–16. This court affirms

48

that ruling. As a practical matter, this court is saying that there are no facts—including a parent's serious illness, temporary incarceration, or involuntary absence from the jurisdiction, or a judge's illness or death—that will ever legally excuse a failure to modify the placement/visitation order within a year after it is issued. This strikes me as going well beyond what the court decided in *Sheboygan County DHHS v. Julie A.B.*, 2002 WI 95, ¶¶ 36–37, 255 Wis. 2d 170, 648 N.W.2d 402.

¶ 97. The legislature has established multiple legal grounds of parental unfitness that may serve as the foundation for a termination of parental rights. Wis. Stat. § 48.415(1)-(10). I agree that there are no "degrees of unfitness" under this statutory scheme. Majority op., ¶ 25. On the other hand, there may be "defenses" or "explanations" for *some* of these grounds that ought to be raised by the defendant for consideration by the fact-finder making the determination of unfitness, as opposed to the court determining the best interests of the child; for when the court considers the best interests of the child, the court's decision revolves around the child, not the parent.[6]

---

[6] In her concurrence, the Chief Justice writes that Wis. Stat. § 48.424(4) does not permit a defendant to present a "defense" at the fact-finding hearing if there are undisputed facts to support one of the statutory grounds. Concurring op., ¶ 56. I disagree. Wisconsin Stat. § 48.424(4) directs the court to "find the parent unfit" *if* grounds for the termination of parental rights are found. It does not prohibit a defendant from presenting a legal defense. A court has the right to determine whether there is a legal defense to a statutory grounds of unfitness, but the fact-finder should determine whether that defense has been established.

¶ 98. In my view, depriving the fact-finder, especially a jury, of the full story before the fact-finder determines that grounds of unfitness exist, is not what the legislature intended. Depriving a parent of the right to the jury trial granted by statute is even worse. The right of trial by jury should not be granted by judges on a case-by-case basis, because the legislature conferred a blanket right. *See* Majority op., ¶ 37, n.4.

## IV

¶ 99. As the majority correctly observes, few judicial decisions are as consequential as a termination of parental rights. Majority op., ¶ 21. A termination judgment severs permanently "the parent's interest in the companionship, care, custody, and management of his or her child," *T.M.F. v. Children's Service Society,* 112 Wis. 2d 180, 184, 332 N.W.2d 293 (1983), who is usually the parent's own flesh and blood. It is thus one of "the most severe forms of state action," *M.L.B. v. S.L.J.,* 519 U.S. 102, 128 (1996) (citing *Santosky v. Kramer,* 445 U.S. 745, 759 (1982)), invoking the outer reaches of governmental power.

¶ 100. The Wisconsin legislature has recognized the vital stakes in a termination decision and established a balanced regimen to assure fairness to all concerned parties. Courts should resist the temptation to try to improve the process by modifying either the substance or procedures of the law. In doing so, they may inadvertently shortchange interests that the legislature sought to protect and unravel the entire statutory scheme. I cannot agree that the majority has improved the process established by the legislature and thus, I respectfully dissent.