**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 25, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1554**

Cir. Ct. No.  **2018TP19**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.J.D., A PERSON UNDER THE AGE OF 18:

S.L.H.,

   PETITIONER-RESPONDENT,

  V.

J.J.D.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Sheboygan County: EDWARD L. STENGEL, Judge. *Affirmed*.

¶1 DAVIS, J.[1] "John"[2] appeals from an order involuntarily terminating his parental rights to "Adam" and from an order denying his postdispositional claim of ineffective assistance of counsel. We find that counsel's performance, although deficient, was not prejudicial. Therefore, John cannot establish that his attorney's assistance in the underlying termination of parental rights (TPR) matter constitutes ineffective assistance of counsel under Sixth Amendment standards. For this reason, we affirm both orders.

*Background*

¶2 Mother "Sarah" filed an involuntary TPR petition against John as to their son Adam on the ground of failure to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6). Sarah amended the petition to add the ground of abandonment, pursuant to § 48.415(1)(a)3., based on John's alleged failure to visit or communicate with Adam for a period of six months or longer. Sarah filed a summary judgment motion on the same grounds. The motion was supported by Sarah's affidavit averring that John did not visit or communicate with Adam for over a year, between June 21, 2017, and August 1, 2018, despite knowing where Adam lived and how to contact him.[3] Adam's guardian ad litem (GAL) filed a brief in support.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] For ease of reading, this opinion uses pseudonyms instead of initials and refers to father J.J.D., the appellant, as "John"; mother S.L.H., the respondent, as "Sarah"; son A.J.D. as "Adam"; and grandmother B.D. as "Barbara."

[3] It was later established that John spoke with Adam on August 13, 2017, and that the specified period of abandonment should have been August 14, 2017, through August 1, 2018.

¶3    In response, John's attorney Jacob Van Kerkvoorde submitted a brief and one-page attorney affidavit, cursorily stating, "[John] asserts that there was good cause for the periods of time in which he failed to visit or communicate with or about [Adam]." *See* WIS. STAT. § 48.415(1)(c) (abandonment is not established if the parent proves by a preponderance of the evidence that he or she had good cause for failing to visit or communicate with the child during the specified time period).  In his reply, the GAL pointed out that Van Kerkvoorde's affidavit did not conform to the summary judgment standards of WIS. STAT. § 802.08(3):  it was not "made on personal knowledge" and it did not "set forth specific facts showing that there is a genuine issue for trial."  The GAL argued that John, not Van Kerkvoorde, was required to attest to "good cause" as a defense to the ground of abandonment.  The GAL maintained that in any case, Van Kerkvoorde's affidavit did not set out any "specific facts" that might form a "good cause" defense.

¶4    At the summary judgment hearing, Van Kerkvoorde argued that whether there was "good cause" was a "very subjective question[], and that's why [John] is entitled to a jury [trial]."  Van Kerkvoorde acknowledged that his response brief could have been more detailed, but explained, "[B]y the time of the filing deadline, I did not know where [John] was, and he had been taken into custody.  I was not aware of that and could not meet and consult with him as I had intended [] to complete a more detailed or thorough affidavit."  Van Kerkvoorde asked that John be given an opportunity to supplement Van Kerkvoorde's affidavit with John's own.

¶5    The trial court pointed out that John was present at an earlier hearing at which the parties discussed the upcoming summary judgment proceeding.  The court found John "ha[d] some obligation[]" to "participate in proceedings that may

affect some very important rights" by "at the very least [] ke[eping] in contact with his lawyer." The trial court also questioned why Van Kerkvoorde did not file a motion for extension if he needed additional time to complete John's affidavit. The court concluded that Van Kerkvoorde's affidavit raised no genuine issue of material fact as to John's "good cause" defense and that Sarah had established grounds for TPR based on abandonment and failure to assume parental responsibility.[4] The court entered an order declaring John an unfit parent and, following the dispositional phase, an order involuntarily terminating John's parental rights. *See* **Steven V. v. Kelley H.**, 2004 WI 47, ¶¶26-27, 271 Wis. 2d 1, 678 N.W.2d 856.

¶6　　John retained new counsel and filed a motion to vacate the summary judgment order. John argued that Van Kerkvoorde provided ineffective assistance by not timely locating John and obtaining his affidavit. According to John, that affidavit would have established that he was incarcerated for the majority of the specified time period but that he wrote letters to and called Adam on the telephone. John argued that these attempts at communication would have been sufficient to raise a genuine issue of material fact as to whether John had a "good cause" defense to abandonment.[5]

---

[4] Sarah did not seek summary judgment based on failure to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6). Because we affirm the trial court's orders as they relate to the ground of abandonment, we do not reach the question of whether § 48.415(6) provides an independent basis for terminating John's parental rights.

[5] John further argued that the trial court erroneously exercised its discretion by not granting Van Kerkvoorde an adjournment to obtain John's affidavit. The trial court ultimately concluded that it did not erroneously exercise its discretion, and John does not dispute this finding on appeal.

¶7      The trial court held a ***Machner***[6] hearing spread over three days.  The bulk of the hearing concerned evidence that had not been submitted on summary judgment, going to "good cause."  In other words, the hearing focused on the "prejudice" prong of ***Strickland v. Washington***, 466 U.S. 668, 687 (1984) (to establish ineffective assistance of counsel, a claimant must show that counsel's performance was deficient and that the deficiency was prejudicial).  In that regard, the testimony largely concerned John's alleged attempts to speak with Adam by phone during his incarceration.  After the first hearing date, the trial court adjourned the hearing on its own motion so that the parties could locate phone records demonstrating when and to whom calls were made.  By the second hearing date, these records had been obtained and showed a lack of any calls from John to Sarah over a nearly one-year period.  John claimed in "rebuttal" testimony that this was because he could not call Sarah directly while in prison.  John alleged that he had instead made a number of "three-way" calls by calling his mother, "Barbara," who then attempted to place conference calls to Adam.  This led to a second adjournment so that Barbara could be deposed.  At the beginning of the third hearing date, the evidence was closed for argument, and the record consisted of testimony from Van Kerkvoorde, John, and Sarah; phone records from Sarah and the Department of Corrections (DOC); and the deposition transcript of Barbara.

¶8      Initially, John testified that he called Sarah on approximately thirty occasions in an effort to speak to Adam.  Although John was unclear on the dates, he believed the calls occurred from "May or June of 2017" up to "[a] few months … prior to [] getting released" from prison in August 2018.  The testimony and

---

[6] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

phone records, however, established: (1) that Sarah maintained only one phone number, beginning with (920), during all relevant times; (2) that John spoke with Adam at that (920) number on February 17, 2017, and August 13, 2017; (3) that John was subsequently incarcerated from either August or September 2017[7] through August 2018; (4) that during John's confinement there was no written communication from him or from any family members on his behalf to Adam; (5) that during John's confinement there were no phone calls made from a DOC phone number to Sarah's phone number; (6) that the phone records showed that there were no calls from John to Sarah via a three-way call.

¶9      Regarding this last point, as previously referenced, John testified that he could not call Sarah directly from prison to speak to Adam because the prison only allowed collect calls, but he did call Sarah via three-way calls with Barbara: he would call Barbara collect, and Barbara would call Sarah. Sarah, in turn, testified that there was no communication of any kind between Adam and John from August 14, 2017, through August 1, 2018. Sarah further testified that she did not receive any calls from Barbara during John's period of incarceration. Barbara, meanwhile, testified at her deposition that she facilitated a number of three-way calls between John and Sarah during the operative time period. Barbara could not explain, however, why there was no DOC phone record of any call from John to Barbara after November 18, 2017. Barbara surmised that John could have been using another person's phone in prison, although John never made any such claim. At the final hearing, counsel for Sarah asserted that there was only one phone call

---

[7] Although there are references in the transcript to John entering prison in August 2017, John testified and further asserts to this court that he was incarcerated in September 2017. Whether John entered prison in August 2017 or one month later is not significant for the purpose of this decision.

with Barbara in Sarah's phone record, from February 17, 2018, and that this was not a three-way call with John. Counsel for John then conceded that "there is no documentary evidence that [John] made calls after August 17th of 2017 and before August 1st of 2018."

¶10    At the conclusion of the hearing, the trial court ruled that Van Kerkvoorde's performance was objectively deficient under *Strickland*. The court nonetheless denied John's motion under *Strickland*'s prejudice prong. The court reasoned that even if Van Kerkvoorde had sought any "additional evidence to support the bare-faced allegations being made," such evidence would not have changed the outcome. The court stated:

> I've given [John's counsel] and [John] more than adequate time to provide any sort of documentation to support some of the statements he has offered here in court today, and we have not seen that evidence at this point. Without that evidence, the Court is not in a position to evaluate [Attorney] Van Kerkvoorde's conduct overall with a determination that it prejudiced the outcome of the case.

In other words, the court found that even if Van Kerkvoorde had timely obtained John's affidavit and diligently sought other evidence in support of the "good cause" defense, there was no "reasonable probability" that John would have prevailed on summary judgment because there was no genuine dispute that John failed to communicate with Adam during his period of incarceration. *See Strickland*, 466 U.S. at 694. Therefore, John could not establish ineffective assistance of counsel requiring a reversal of the TPR order. John appeals.

*Discussion*

¶11    Wisconsin mandates a two-part procedure for involuntary TPR proceedings. *Steven V.*, 271 Wis. 2d 1, ¶24. In the first or "grounds" phase, the

petitioner must prove by clear and convincing evidence that there exist one or more of the twelve statutory grounds for parental unfitness under WIS. STAT. § 48.415(1)-(10). *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. If the parent is declared unfit, then the proceeding moves to the dispositional phase, which focuses on the best interests of the child. *Id.*, ¶¶26-27. John appeals from the final order involuntarily terminating his parental rights based on ineffective assistance of counsel at the grounds phase.

¶12    A TPR respondent has the right to effective assistance of counsel, as defined under *Strickland*. *In re M.D.(S).*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). To establish ineffective assistance of counsel warranting reversal of a TPR order, the respondent must show that counsel's performance was deficient and that the deficient performance was prejudicial. *Id.* at 1005 (referencing *Strickland*, 466 U.S. at 687). Deficient performance is prejudicial where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. On appeal, the trial court's factual findings as to counsel's conduct are upheld unless clearly erroneous, but this court decides de novo whether that conduct constitutes ineffective assistance. *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 710-11, 530 N.W.2d 34 (Ct. App. 1995).

¶13    According to John, Van Kerkvoorde provided ineffective assistance on summary judgment by not sufficiently raising a genuine issue of material fact as to whether John had "good cause" under WIS. STAT. § 48.415(1)(c) for not visiting or communicating with Adam for a period of six months or longer. Summary judgment is appropriate in the unfitness phase of a TPR case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); **Steven V.**, 271 Wis. 2d 1, ¶6. The moving party has the initial burden of showing the absence of genuine issues of material fact. **Central Corp. v. Research Prods. Corp.**, 2004 WI 76, ¶19, 272 Wis. 2d 561, 681 N.W.2d 178. Once the moving party has satisfied this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Sec. 802.08(3). Under § 48.415(1)(c), the respondent has the burden of proof, by a preponderance of the evidence, as to good cause for abandonment. *See* **Odd S.-G. v. Carolyn S.-G.**, 194 Wis. 2d 365, 372-75, 533 N.W.2d 794 (1995). Therefore, on summary judgment the respondent must present evidence raising an issue of fact to support this defense. *See* **Brown Cty. v. B.P.**, 2019 WI App 18, ¶¶35-42, 386 Wis. 2d 557, 927 N.W.2d 560.

¶14 The trial court found, and we agree, that Van Kerkvoorde provided objectively deficient performance by not seeking out evidence to support John's "good cause" defense prior to the summary judgment hearing. Nonetheless, John has not shown that his attorney's conduct prejudiced him because he has not shown a reasonable probability that the trial court would have denied the motion had Van Kerkvoorde in fact sought out that evidence. It is certainly likely that John's incarceration status constituted "good cause" for his failing to *visit* with Adam from August or September 2017 through August 1, 2018. *See* WIS. STAT. § 48.415(1)(c)1. Even so, under § 48.415(1)(c)2., it was John's burden on summary judgment—and therefore his burden in postdispositional proceedings—to present some evidence showing "good cause" for failing to *communicate* with Adam for at least six months during that period.

¶15 John did not meet this burden. Although both he and Barbara testified that he regularly called Sarah from prison in order to speak to Adam, the

documentary evidence completely refutes this testimony. The phone records establish that there were no calls to Sarah's phone number from John (either directly or via a three-way call with Barbara) after November 18, 2017, at the latest (the date of John's last call to Barbara) through August 1, 2018—a period of longer than six months. *See* WIS. STAT. § 48.415(1)(a)3. John stated that this was the only phone number he had for Sarah, and there is no evidence that John attempted to reach Sarah at some other number or using some other number. There is also no evidence that John otherwise tried to communicate with Adam through written letters, cards, or any other means.

¶16 Accordingly, even had Van Kerkvoorde provided reasonably effective assistance on summary judgment, John still would have been unable to raise a *genuine* issue of material fact—a factual issue being "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Baxter v. DNR***, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) (citation omitted). Rather, the result would have been the same: without any explanation as to why the phone records were wrong or incomplete, the trial court would have had to conclude that there was "no triable issue of fact" to present to a jury. *See **Maynard v. Port Publ'ns, Inc.***, 98 Wis. 2d 555, 562, 297 N.W.2d 500 (1980); *see also **Breitenbach v. Gerlach***, 27 Wis. 2d 358, 363, 134 N.W.2d 400 (1965) ("It is elementary that if facts are evidenced by documents or public records they control on motion for summary judgment unless the opposing party shows facts sufficient to raise an issue as to their authenticity or conclusiveness.").

¶17 "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." ***Scott v. Harris***, 550 U.S. 372, 380 (2007). That

generalized statement from the United States Supreme Court concerning summary judgment methodology is well suited to a case where a party's oral (and, frankly, somewhat vague) testimony that phone calls were made in a given timeframe is completely contradicted by contemporaneous, electronically-created phone records, the authenticity of which has never been questioned.

¶18     We emphasize, consistent with case law, that summary judgment is a disfavored remedy in TPR proceedings premised on fact-intensive grounds such as abandonment.  *Steven V.*, 271 Wis. 2d 1, ¶¶36-37; *see also **J.M.W. v. J.R.P.***, No. 2017AP1390, unpublished slip op. ¶18 (WI App Sept. 20, 2017) ("[W]e strongly caution against the use of summary judgment at a TPR proceeding where the parent is present and objecting.").  Simply because a remedy is disfavored, however, does not mean that it is never appropriate, as the grant of summary judgment in ***Steven V.*** makes clear.  Where there truly is no credible evidence showing a triable issue of fact, summary judgment is available.  *See, e.g.*, ***Juneau Cty. DHS v. L.O.O.***, No. 2018AP654, unpublished slip. op. ¶19 (WI App Nov. 8, 2018) (affirming summary judgment on abandonment grounds and finding no ineffective assistance of counsel where further investigation would not have discovered facts sufficient to defeat summary judgment).

¶19     At no point in the course of the proceedings below, whether by affidavit or at the ***Machner*** hearing, was John able to provide evidence refuting or undermining the import of the phone records, which he has admitted show no

communication between him and Adam for at least a six-month period.[8] The trial court was therefore correct to deny John's postdispositional motion because John did not establish ineffective assistance of counsel based on his attorney's lack of preparation for the summary judgment hearing.[9] We affirm that order and affirm the underlying order terminating John's parental rights as to Adam.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4

---

[8] Perhaps because of the phone record evidence, John also argued that he had "good cause" for not communicating with Adam during his period of incarceration because in the months *prior to that time*—from February through August 2017—Sarah was uncooperative and discouraged visits. Specifically, his attorney argued that "even though there is no documentary evidence that [John] made calls after August 17th of 2017 and before August 1st of 2018, he did have a pattern before then of trying to make calls…. [a]nd for a while [he] didn't have the correct number, although he did have it in time for the calls in February of 2017 and August of 2017." This argument is based on the premise that John eventually "got tired of wasting his breath and time and quit making phone calls to Sarah" (though in the same breath he claimed that calls were made during the time in question). In any event, this argument fails on its merits as it does not overcome the need to show some efforts during the period in question. The argument is also belied by the undisputed fact that John did speak with Adam on August 13, 2017, after the time in which he had supposedly given up making calls due to Sarah's intransigence.

[9] Because we conclude that the trial court's grant of summary judgment would not have changed, we need not consider how the distinction between summary judgment and ineffective assistance standards might come into play in a case where deficient representation caused an improvident grant of summary judgment. Put another way, we need not address whether a court could find no reasonable probability of a different outcome in the ultimate disposition of the case even if effective assistance would have defeated summary judgment by raising a genuine issue of material fact. The distinction between summary judgment and ineffective assistance standards, and how that distinction might bear on the outcome of ineffective assistance of counsel claims involving summary judgment, is an issue that does not appear to have been addressed in prior decisions. As there is no need to address it here, we decline to do so. We note, however, that the trial court's decision to hold a *Machner* hearing to address prejudice from deficient representation at summary judgment, and the trial court's commendable efforts to ensure a thorough record, provide further confidence that the outcome of the overall case would not have been different under either standard. We encourage courts to hold *Machner* hearings in ineffective assistance cases involving summary judgment.