**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 15, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2022AP1821**
**2022AP1822**
**2022AP1823**
**2022AP1824**
**2022AP1825**

Cir. Ct. Nos.  **2021TP86**
**2021TP87**
**2021TP88**
**2021TP89**
**2021TP90**

**STATE OF WISCONSIN**                **IN COURT OF APPEALS
DISTRICT II**

---

**NO. 2022AP1821**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.E.V., A PERSON UNDER THE AGE OF 18:**

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

   **PETITIONER-RESPONDENT,**

 **V.**

**A.C.S.,**

   **RESPONDENT-APPELLANT.**

---

**NO. 2022AP1822**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.V. JR., A PERSON UNDER THE AGE OF 18:**

---

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

   **PETITIONER-RESPONDENT,**

 **V.**

**A.C.S.,**

   **RESPONDENT-APPELLANT.**

---

**NO. 2022AP1823**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO C.D.A.S., A PERSON UNDER THE AGE OF 18:**

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

   **PETITIONER-RESPONDENT,**

 **V.**

**A.C.S.,**

   **RESPONDENT-APPELLANT.**

---

**NO. 2022AP1824**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.L.S., A PERSON UNDER THE AGE OF 18:**

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

   **PETITIONER-RESPONDENT,**

 **V.**

**A.C.S.,**

   **RESPONDENT-APPELLANT.**

No. 2022AP1825

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E.G.R.S., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,

    PETITIONER-RESPONDENT,

  V.

A.C.S.,

    RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Kenosha County: GERAD DOUGVILLO, Judge. *Reversed and cause remanded for further proceedings.*

¶1 GROGAN, J.[1] A.C.S. ("Anna"), the mother of the five children involved in this consolidated appeal, appeals from orders terminating her parental rights to each child.[2] On appeal, Anna contends the circuit court deprived her of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court granted the motion to consolidate the five separate cases into a single appeal for disposition purposes. These cases involve the mother's appeal from the five orders terminating her parental rights to her five children, and unless otherwise noted, we will refer to the termination of parental rights (TPR) proceedings jointly. This court will use pseudonyms to reference the mother and five children throughout, and this court uses the same names the parties used in their respective briefs.

her right to counsel when it proceeded with a January 2022 summary judgment motion hearing during the grounds phase, despite her attorney's absence.[3] She also asserts that the circuit court again erred when it later refused to grant her motion to vacate the summary judgment order based on her assertion that the circuit court had deprived her of her right to counsel when it proceeded with the summary judgment motion hearing.[4] Because Anna was deprived of her right to counsel during the grounds phase, this court reverses and remands for further proceedings consistent with this opinion.

## I. BACKGROUND

¶2 In March 2017, police were called to Anna's home after her thirteen-month-old child, Jacob, was found deceased in his pack 'n play. The State charged Anna with child neglect resulting in death, and she entered a no contest plea in July 2019. The circuit court withheld sentence, placed Anna on ten years' probation, and required her to serve six months in jail.

¶3 Following Jacob's death, the County subsequently removed Anna's three other minor children—Ezekiel (born in 2012), Dana (born in 2013), and

---

[3] The Honorable Chad G. Kerkman presided over the January 2022 hearing, and he granted the County's summary judgment motion as to the grounds phase of these proceedings.

[4] The Honorable Gerad Dougvillo presided over the initial hearing and heard and decided Anna's motion seeking to vacate Judge Kerkman's decision. Judge Dougvillo also presided over the dispositional hearing and entered the five orders (one for each child) terminating Anna's parental rights. All five termination orders were entered on March 28, 2022, after the circuit court held a dispositional hearing on all five petitions at the same time. For the sake of clarity, this opinion will at times refer to Judge Kerkman and Judge Dougvillo by name when referencing specific events at hearings, rather than the more general "circuit court," given that this opinion addresses comments made and orders entered by each judge.

4

Caleb (born in 2014)—from the home after filing petitions alleging each was a child in need of protection or services (CHIPS).[5] The other two children subject to the termination of parental rights (TPR) petitions at issue here, Alejandro (born in 2018) and Manuel (born in 2019), were removed from Anna's care shortly after birth pursuant to CHIPS petitions.[6]

¶4  On November 2, 2021, the County filed a petition as to each of the five children seeking to terminate Anna's parental rights. The County alleged that Anna had failed to meet the conditions necessary to return the children to her care, that grounds existed for termination, and that it was in the children's best interests to terminate Anna's parental rights.

¶5  On December 2, 2021, Anna and her attorney, Brenda VanCuick, attended the initial TPR hearing. The circuit court adjourned the initial hearing, however, because the father of Alejandro and Manuel had not yet obtained counsel. On December 16, 2021, Anna and Attorney VanCuick appeared for the adjourned initial hearing, at which time the County requested a hearing date for the partial summary judgment motion it had filed on December 2nd asserting that grounds existed to find Anna was an unfit parent based on her having been charged with and convicted of a serious felony against a child related to Jacob's

---

[5] The father of Ezekiel, Dana, and Caleb passed away prior to Jacob's death and therefore was not a part of the termination proceedings. Anna also has an older child whom she had previously placed for adoption.

[6] The father of Alejandro and Manuel contested the termination of his parental rights and participated in some of the proceedings, although the termination of his parental rights is not at issue in this appeal.

death. The court set a summary judgment motion hearing date for January 12, 2022.

¶6    On Monday, January 10, 2022, Attorney VanCuick began a reckless homicide trial before a different judge in the Kenosha County Circuit Court in an unrelated matter, and she expected that trial to last the full week. On Tuesday, January 11th at 10:35 a.m., Judge Kerkman's assistant sent an e-mail to the attorneys and social worker in this case stating that Judge Kerkman would be hearing the "11 a.m. [summary judgment] motion hearing" on behalf of Judge Dougvillo, the assigned judge.[7]    However, due to being in trial, Attorney VanCuick did not see the e-mail until approximately 4:45 a.m. the following morning, January 12th, at which time she replied to all that she was in the middle of a criminal trial and would therefore be unavailable for the motion hearing.[8]  Attorney VanCuick also notified Anna that the January 12th hearing would be rescheduled due to her unavailability and that she should check back with her for a new date.

¶7    At some point prior to the 11:00 a.m. summary judgment motion hearing scheduled in this case, Attorney VanCuick's reckless homicide trial

---

[7] Although it is not entirely clear from the Record why Judge Kerkman stepped in to hear the motion for Judge Dougvillo, Judge Kerkman explained during the hearing that he was "handling this case for another judge" and that he needed to finish promptly as he had "plans at 11:40."

[8] It is unclear from the Record whether Attorney VanCuick had previously notified the circuit court that she had a scheduling conflict with the January 12th motion hearing date or, if not, why she did not notify the circuit court in Anna's case prior to the morning of the hearing that she would be unavailable for Anna's hearing. Nevertheless, this court is aware that it is common practice to adjourn or to reschedule a hearing when a party's attorney has a scheduling conflict involving a different matter.

resolved. Although the trial had resolved, Attorney VanCuick nevertheless remained occupied with wrapping up the homicide case throughout the morning and therefore did not contact the circuit court assigned to Anna's case (or Judge Kerkman, who was conducting the hearing that morning) because she believed, based on her multiple years of experience practicing in Kenosha County, that the motion hearing in Anna's case would be rescheduled based on her previously having informed the circuit court of her unavailability.

¶8 Despite not having heard from Attorney VanCuick that her conflicting trial had resolved, Judge Kerkman's assistant sent an e-mail to the attorneys and social worker at approximately 10:04 a.m. stating that she had "heard" that Attorney VanCuick was now available due to her trial having resolved and that Judge Kerkman would therefore hold the hearing at the scheduled time. Because Attorney VanCuick was still addressing matters related to the criminal trial, she did not see the assistant's e-mail until after the hearing had already occurred. Judge Kerkman apparently attempted to reach Attorney VanCuick by phone around the hearing's scheduled start time, but it does not appear the court made any additional attempts to contact Attorney VanCuick before insinuating she should be available.[9]

¶9 Because Attorney VanCuick was unaware that Judge Kerkman planned to proceed with the scheduled motion hearing, neither she nor Anna appeared for the January 12, 2022 hearing. The hearing transcript reflects that Judge Kerkman asked the County if it was "looking to have [Anna] found in

---

[9] It also does not appear that Judge Kerkman attempted to contact Anna.

7

default and … to have the motion … be heard still today[,]" despite their absence, and the County responded affirmatively as to both. In regard to Attorney VanCuick, Judge Kerkman stated as follows:

> As far as Attorney VanCuick, the attorney for the mother, we tried calling her before going on the record. She didn't pick up her phone. We were told that she -- originally she was expecting to be in a jury trial today. She is not in a jury trial today. That trial resolved. We were told she is no longer in Branch 2 as of 9:15 this morning. We don't know where she is. We don't know that she would have a schedule conflict if she was expecting to be in a jury trial that she is no longer in.

¶10 The County then asked the circuit court to decide the summary judgment motion and to find that grounds to terminate Anna's parental rights existed under WIS. STAT. § 48.415(9m) based on her conviction related to Jacob's March 2017 death. The circuit court granted the motion and found that grounds existed to terminate Anna's parental rights to all five of her children and that she therefore was an unfit parent. The court asked the County whether it would be dismissing any other alleged grounds or needed a factfinding hearing. The County responded that a factfinding hearing would be unnecessary but requested that the court find Anna in default on the continuing CHIPS ground with respect to all five children, given her failure to appear for the hearing. The court granted the request.

¶11 Anna did not learn that the January 12th hearing had proceeded as scheduled—despite what Attorney VanCuick had told her beforehand about it being rescheduled—until after Judge Kerkman had rendered decisions on the summary judgment motion and default request. Upon discovering the hearing had occurred, Anna e-mailed Attorney VanCuick and asked what could be done. Attorney VanCuick drafted a motion dated January 27, 2022, to vacate

8

Judge Kerkman's default and summary judgment orders on the grounds that: (1) she had notified the circuit court she was unavailable for the scheduled summary judgment motion hearing due to having been in trial on January 12th; (2) she remained involved in obligations related to that trial on January 12th, even though the trial unexpectedly resolved earlier that morning; (3) she remained unavailable at the time of the scheduled hearing and had never informed the circuit court she was available, despite the conflicting jury trial having resolved unexpectedly; (4) she was unaware of the circuit court's attempts to reach her on January 12th until after the hearing had concluded; (5) she had informed Anna that the hearing would be rescheduled; and (6) proceeding with the hearing in her absence violated Anna's right to counsel. Attached to the motion as exhibits were the e-mail and communications described above.

¶12    Attorney VanCuick believed the motion to vacate had been electronically filed on or around January 27th, which was when the motion was dated, and she did not discover that her attempt to file the motion electronically was unsuccessful until just prior to the dispositional hearing scheduled for March 24, 2022.  Attorney VanCuick explained to the court (now Judge Dougvillo, the assigned judge) at the March 24th hearing that she believed she had filed the motion in January and had "no explanation as to why it hadn't been uploaded."

¶13    Because Attorney VanCuick's motion had not been properly filed, neither the circuit court nor the other relevant parties were aware of it. Consequently, Judge Dougvillo believed—as did the County—that the March 24th proceeding would be a dispositional hearing, whereas Attorney VanCuick believed

9

the court would hear arguments as to Anna's motion to vacate Judge Kerkman's orders. The County advised the court that it wished to proceed to the dispositional hearing, that it planned to proceed solely on the grounds asserted in the summary judgment motion Judge Kerkman had granted, and that it did not plan to rely on Judge Kerkman's default finding.[10]

¶14    Judge Dougvillo explained that he did not see any motion to vacate on the record, concluded the motion to vacate was untimely, and indicated he planned to move forward with the dispositional hearing. Attorney VanCuick then stated:

> Judge, if I could just make a record on -- on your ruling. I understand the Court's position about vacating a default. Part of that motion is when that motion for summary judgment was granted, it was granted without my presence nor the presence of [Anna]. And so there was -- in my estimation that was denying [Anna] her right to counsel.
>
> The Court had been made aware I was in trial. There were some e-mails that had gone back and forth between some parties, but there wasn't a time that I had said that I was available. Despite that the Court went forward on the -- apparently on the information that my trial resolved and so now the hearing was going to be on. My trial did resolve, but I was still involved with trial matters including speaking to my client and so I was unaware that the hearing was taking place and I was not present.
>
> And so I believe-- Well, and part of my motion was the denial of the right to counsel. So I -- I just wanted to make a record that I was not able to argue against the summary

---

[10] The County frequently references the default finding throughout its Response brief, despite the fact that Judge Dougvillo vacated the default finding. Because the circuit court vacated the default finding, it is not relevant to the issue presented here, and this court will not address the County's default-related arguments.

10

judgment motion because of that Court going forward without me being present.

Judge Dougvillo ultimately postponed the dispositional hearing to the following day after other parties, including the guardian ad litem (GAL), advised the court they were likewise unavailable to proceed that day.

¶15 Before the dispositional hearing commenced the following day, March 25th, the circuit court noted that Attorney VanCuick had successfully filed the motion to vacate and allowed counsel to address it. Attorney VanCuick explained:

> As I stated in my motion, I kind of laid more of the facts out. But essentially I was in trial. The trial had settled with a plea. However, I -- I was not available and went on the assumption that, you know, the hearing was going to be rescheduled. Didn't have my phone, didn't check e-mail until probably around noon or 12:30; and then found out I had another hearing at 1:15 that I was told I had to be at.
>
> So I -- also I believe in my motion I had stated that the early morning hours of the 12th I had reached out to [Anna] letting her know that I was in trial, and she should contact me for the new date because I wouldn't have a lot of time to communicate once essentially the 7:30, 8:00 hour hits, pretty much unavailable because of trial.
>
> She did reach out to me, and I believe I provided it as an exhibit, through e-mail at just after 10 asking, okay, is this really rescheduled? What's -- what's happening? And I hadn't received that e-mail either until much after the fact. So I was unaware that the hearing actually even took place, and then found out and got the transcript so I was able to see what had occurred in my absence.
>
> So I think-- I -- I didn't argue in my motion equity or fundamental fairness or due process. I didn't even mention those things because I think those are fairly self-evident. But I think the most important issues are the ones that I had identified in -- in the motion, which is I firmly believe that all of the parties, including the judiciary, knew that counsel was appointed. That I was counsel.

11

[Anna], she relied upon my representation that the hearing was going to be rescheduled. And for the Court to go forward without me being present, without actual word from me saying yes, I will be there and then not showing up, I think that would be a different scenario but I -- that was not the case. And so I -- I feel that it was improper for the Court to go forward. I feel that it did deprive [Anna of] her right to counsel.

I do understand that a motion for summary judgment is fairly straightforward. However, it -- it is a very critical phase of a TPR process. These are the most important of issues. Constitutionally there are several protections for parents when termination of parental rights actions are filed, and so it makes it even that much more important to have counsel and to have effective counsel.

So I do feel like for those reasons -- for all of those reasons I feel that the default against [Anna] should be vacated because she relied to her detriment on my representation. And furthermore, I just believe that the matter should be set for a summary judgment motion hearing so that we can at least present the defense and make a record to the [County's] motion.

¶16    The County responded that it had no objection to vacating the default finding because it was proceeding solely on the summary judgment order with respect to grounds and termination. It objected to vacating the summary judgment order, however, arguing that the ground underlying the summary judgment order was Anna's criminal conviction related to Jacob's death and that Anna could not present any meritorious defense to the summary judgment motion. The court granted the motion to vacate the default finding but denied the motion to vacate the summary judgment order based on its conclusion that there was no basis for vacating the summary judgment order under WIS. STAT. § 806.07. Before then proceeding to the dispositional portion of the hearing, Attorney VanCuick stated:

12

Thank you, your Honor. And I -- I certainly don't want to speak out of turn, but I did want to just complete the record on -- on the Court's ruling on the motion. There were just a couple of -- I guess a couple of representations that I -- I think were inaccurate that I just want to make a record of.

I guess one of -- one of the arguments is there -- the numerous efforts that were alleged to have been made to find me. There is no record of that. I had one missed phone call at 11:02 a.m. and no e-mails, no text messages and no calls on my cellphone. So I don't know what these extraordinary efforts were but there's no record of that.

And then the Court had noted that [Anna], I had -- I had put her e-mail in there to me at 10. I did not include the e-mail, although in paragraph 4 on page 2 I did address the fact that I had at four something in the morning of the 12th sent her an e-mail saying I'm in trial, the -- the case is -- the hearing will likely be rescheduled. You'll have to contact me for the new date but I'm -- I'm in trial. So I did send her that. I did mention that as I said in paragraph 4 on page 2. I certainly can provide the Court with a copy of that e-mail if necessary.

And then finally I -- I do believe that the Court -- I appreciate the Court going through the analysis under 806.07. That analysis, of course, was to vacate the default judgment, not necessarily for, I guess, to vacate the summary judgment motion. That was more the denial of right to counsel and due process.

But either way I -- I just wanted to state for the record that I appreciate your kind words that I am an experienced attorney I do feel. I don't know if that just means I'm old but I have been practicing 18 years all in this community, and there has never been a time when I have informed the Court that I was in trial or unavailable where I was required or I had some reason to believe that I should somehow then appear. So that has never been the case.

This is -- this is an anomaly of astronomical proportion. And so I absolutely agree that with the seriousness of these cases and with -- with the Court taking action that it did, that's never happened to me. I never heard of such a thing happening. And in a TPR case, it is almost certain to be reviewed under appeal.

13

And so I -- I just want to make the record clear that there is nothing in me even sitting here today that I ever would have thought in a million years that a Court would proceed after hearing that an officer of the court, not a new person, someone who's been in this community practicing for 18 years, would my representation that I was unavailable would be ignored and hearing would go forward and make a -- a very significant finding in a TPR case. So that -- that -- I just wanted to make that record, and I appreciate you allowing me to do that.

¶17 The dispositional hearing proceeded and continued into a second day. At the conclusion of the hearing, the circuit court concluded that termination of parental rights was in the best interests of all five children, and it subsequently signed orders for each child to that effect. Anna now appeals.

## II. DISCUSSION

¶18 The issue in this case is whether Anna was deprived of her right to counsel when the circuit court (Judge Kerkman presiding) held the January 12th summary judgment motion hearing in the absence of Anna and Attorney VanCuick under the facts and circumstances of this case. For the reasons that follow, this court concludes Anna's right to counsel was violated when the circuit court proceeded with the January 12th motion hearing in Attorney VanCuick's absence, and because this court further concludes the deprivation of the right to counsel during the grounds phase of the TPR

14

proceedings amounted to a structural error, this matter is reversed and remanded for further proceedings.[11]

¶19    "Termination of parental rights permanently extinguishes 'all rights, powers, privileges, immunities, duties and obligations existing between parent and child.'" ***Steven V. v. Kelley H.***, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting WIS. STAT. § 48.40(2)).    Consequently, "[p]arental rights termination adjudications are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" ***Steven V.***, 271 Wis. 2d 1, ¶21 (quoting ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶20, 246 Wis. 2d 1, 629 N.W.2d 768).

¶20    "A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment." ***Steven V.***, 271 Wis. 2d 1, ¶22 (citing ***Santosky v. Kramer***, 455 U.S. 745, 753 (1982)).    Indeed,

> [t]he [Supreme] Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential,"[12]

---

[11] Although this reversal may or may not change the ultimate outcome in this case, it is imperative that when a court presides over a TPR proceeding, it take every precaution to ensure that it follows the law. The statutes and procedures governing TPRs exist for a reason, and courts must faithfully follow the statutes, even in cases like this, where a variety of circumstances delay resolution for a period of time. Here, any consequence of rescheduling the January 12th hearing to ensure compliance with the law—namely, ensuring Anna was not deprived of her right to counsel at a critical stage in these proceedings—would have been far more efficient than proceeding, risking reversal on appeal, and having to begin again at the grounds phase—as is now the case here.

[12] ***Meyer v. Nebraska***, 262 U.S. 390, 399 (1923).

"basic civil rights of man,"[13] and "[r]ights far more precious ... than property rights[.]"[14] "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."[15]

*Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (omission in original); *see also Steven V.*, 271 Wis. 2d 1, ¶¶21-22. Thus, "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky*, 455 U.S. at 753–54. "Due process requires a hearing and clear and convincing proof of unfitness[.]" *Steven V.*, 271 Wis. 2d 1, ¶44 (internal citations omitted).

¶21 TPR proceedings in Wisconsin require a two-step process. *State v. Shirley E.*, 2006 WI 129, ¶26, 298 Wis. 2d 1, 724 N.W.2d 623. First, the factfinding or grounds phase "consists of an evidentiary hearing to determine whether adequate grounds exist for the termination of parental rights." *Id.*, ¶27. WISCONSIN STAT. § 48.415 provides multiple statutory grounds upon which a petition for termination of parental rights may be based. If the petitioner "demonstrate[s] by clear and convincing evidence" that such grounds exist, "the circuit court 'shall find the parent unfit.'" *Shirley E.*, 298 Wis. 2d 1, ¶27 (quoting WIS. STAT. § 48.424(4)). During this first stage, "'the parent's rights are paramount.'" *Shirley E.*, 298 Wis. 2d 1, ¶27 (citation omitted). If the circuit court determines a parent is unfit, the second phase, disposition, "consists of another

---

[13] *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942).

[14] *May v. Anderson*, 345 U.S. 528, 533 (1953).

[15] *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

evidentiary hearing in which the circuit court determines whether termination of parental rights is in the child's best interests." *Id.*, ¶28. Although "[t]he child's interests are paramount at this stage," "the parent has a right to present evidence and be heard." *Id.*

¶22 A parent facing an involuntary termination of parental rights is entitled to representation of counsel. WIS. STAT. § 48.23(2)(b); *see also A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992) (explaining the right to counsel must be *effective* and adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for TPR proceedings). The statutory right to counsel is "[o]ne of the procedural safeguards the legislature has afforded to parents in [TPR] proceedings," and this right is "'unequivocal: A parent has the right to representation in court unless there is a waiver[.]'" *Shirley E.*, 298 Wis. 2d 1, ¶¶30, 35 (citation omitted). A parent over the age of eighteen "can waive the assistance of counsel, but only if the circuit court finds that the waiver is knowing and voluntary." *Id.*, ¶30; § 48.23(2)(b)1 (a "parent who appears before the court" in a TPR proceeding "shall be represented by counsel," unless the parent is over the age of eighteen and "knowingly and voluntarily" waives counsel).

¶23 "The statutory right to the assistance of counsel in a [TPR] proceeding is … essential to a fair proceeding." *Shirley E.*, 298 Wis. 2d 1, ¶60. Counsel is similarly "viewed as essential to fair proceedings" in criminal matters, and "when a litigant has been totally deprived of the presence and assistance of an attorney *during a critical stage in the proceeding*, reversal is automatic." *Id.*, ¶61 (emphasis added). "Courts have long recognized that the total deprivation of

17

counsel in criminal proceedings is a 'structural error.'" *Id.*, ¶62. Structural errors "affect '[t]he entire conduct of the trial from beginning to end.' An error also may be structural because of the difficulty of determining how the error affected the trial." *State v. Pinno*, 2014 WI 74, ¶49, 356 Wis. 2d 106, 850 N.W.2d 207 (alteration in original; citation omitted); *see also Neder v. United States*, 527 U.S. 1, 8 (1999). "Whether a particular error is structural and therefore not subject to a harmless error review is a question of law" this court reviews independently. *State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317; *State v. C.L.K.*, 2019 WI 14, ¶12, 385 Wis. 2d 418, 922 N.W.2d 807.

¶24 It is undisputed that aside from the January 12th motion hearing, Anna appeared personally throughout the TPR proceedings, as did her attorney, Attorney VanCuick. Because Anna appeared in these proceedings, WIS. STAT. § 48.23(2)(b), which provides that "any parent who appears before the court [in a TPR proceeding] shall be represented by counsel," unless "the court is satisfied that the waiver [of counsel] is knowingly and voluntarily made[,]" applies. *See Shirley E.*, 298 Wis. 2d 1, ¶32. In determining whether a parent has waived counsel in such proceedings, "it is 'the duty of the court to determine by careful questioning that the waiver of counsel[] … is knowledgeable and voluntary.'" *Id.*, ¶57 (alteration and omission in original; citation omitted). Not only did the circuit court here fail to conduct any such inquiry in this matter when it chose to proceed with the January 12th summary judgment motion hearing in Anna and Attorney VanCuick's absence during the grounds phase, the Record establishes that Anna previously had consistently appeared before the court, was actively involved throughout these proceedings, and was in regular contact with her

18

attorney regarding the TPR proceedings. Accordingly, Anna did not waive her right to counsel.

¶25 Having determined Anna did not waive her right to counsel, this court turns to the question of whether the circuit court violated Anna's right to counsel when it proceeded to hear the County's summary judgment motion in Attorney VanCuick's absence at the January 12th hearing. Under the facts and circumstances present here, this court concludes that it did and that the deprivation of counsel constituted structural error.

¶26 The County filed a motion for partial summary judgment asserting grounds existed to terminate Anna's parental rights under WIS. STAT. § 48.415(9m) based on her having been charged with and convicted of committing a felony against a child. Summary judgment, which is ultimately a legal conclusion, *see* WIS. STAT. § 802.08, "is just as appropriate in the unfitness phase of a TPR case where the facts are undisputed as it is in any other type of civil action or proceeding which carries the right to a jury trial" so long as the court carefully regards "the importance of the rights at stake and the applicable legal standards[.]" *Steven V.*, 271 Wis. 2d 1, ¶35.

¶27 Although summary judgment can be appropriate in a TPR proceeding, whether Judge Kerkman erred in granting the County's motion is not the issue on appeal—despite the County's best effort to present the issue in that light. In its brief, the County makes much of the fact that Anna neither filed a written response to the summary judgment motion, nor has she offered a meritorious defense to that motion. The County offers these arguments in support of its position that the circuit court did not err in granting summary judgment as to

the grounds phrase. The County's arguments, however, miss the mark. First, the summary judgment statute does not require that a party respond to a summary judgment motion in writing as opposed to offering oral argument at the motion hearing, *see* WIS. STAT. § 802.08(2), and it does not appear that the court had otherwise ordered Anna to do so. Thus, even though Anna had not filed a written response as of the January 12th motion hearing date, she could have presented arguments or a defense at that hearing.

¶28     Second, and more importantly, the question here is not whether the circuit court erred in granting the summary judgment motion but rather *whether the court's decision to proceed with the summary judgment motion hearing in Attorney VanCuick's absence violated Anna's right to counsel in the first instance.* If it did, the question of whether the circuit court erroneously granted the summary judgment motion is a nonstarter because the hearing simply should not have occurred. Stated otherwise, whether Anna had filed a written response, whether she has a meritorious defense to the motion, or whether the circuit erroneously granted summary judgment motion does not trump Anna's right to counsel. *See Shirley E.*, 298 Wis. 2d 1, ¶20 (unnecessary to address sufficiency of evidence where TPR order vacated due to violation of right to counsel that amounted to structural error).

¶29     Here, Attorney VanCuick informed the circuit court she would be unavailable for the January 12th hearing because she would be representing a client in a criminal trial during that same time. Specifically, after receiving an e-mail dated January 11, 2022, notifying the parties that Judge Kerkman would be presiding over the motion hearing on behalf of Judge Dougvillo,

Attorney VanCuick responded early the following morning—when she saw the e-mail—that she was unavailable due to being in trial in a criminal matter and that she had "informed [Anna] that the hearing will be rescheduled" and that Anna would "need to contact [her] for the new date."[16] Although Judge Kerkman apparently learned that Attorney VanCuick's trial had resolved "as of 9:15" the morning of the January 12th hearing, he did not learn that information from Attorney VanCuick. Rather, he learned it from an unidentified secondhand source and relied upon that secondhand information in determining of his own accord that Attorney VanCuick should not have a conflict with Anna's motion hearing if her trial in the other matter had resolved. In reaching this conclusion, Judge Kerkman seemingly assumed that Attorney VanCuick did not have any obligations related to her jury trial that required her attention, despite the trial having concluded earlier than anticipated, and he thereafter determined it was appropriate to proceed

---

[16] Judge Kerkman's assistant responded via e-mail that Judge Kerkman would "NOT adjourn anything off the record on TPR cases." However, the assistant did not send the e-mail until 8:37 a.m.—just two hours and twenty-three minutes prior to the scheduled hearing and presumably after Attorney VanCuick's trial would have already started. In any event, even if Judge Kerkman was unwilling to adjourn the matter off the record—such as via e-mail—there was nothing preventing him from adjourning the matter once the case was called at the scheduled start time. As previously noted, this court is aware that it is common practice to adjourn or reschedule a hearing when a party's attorney is in trial or has a scheduling conflict on behalf of a client in a different matter.

This court also notes that during the above-referenced e-mail exchange, the County's attorney stated she would be "present in-person for court to call the case and toll time limits." At the hearing, however, that same attorney did *not* ask the circuit court to toll the time limits but instead specifically requested that the court "address the issue of the summary judgment motion -- the Partial Summary Judgment motion -- if the Court [was] willing."

21

with the hearing after the court was unable to reach Attorney VanCuick by phone around the hearing's scheduled start time.[17]

¶30     While it is understandable that Judge Kerkman did not want to delay these TPR proceedings by adjourning and rescheduling the summary judgment motion to a later date, by proceeding with the hearing in Attorney VanCuick's (and Anna's) absence under these circumstances, Judge Kerkman effectively barred Anna from challenging the County's evidence and presenting evidence and argument of her own during the grounds phase—*a critical phase*—of these TPR proceedings.  *See **Shirley E.**, 298 Wis. 2d 1, ¶¶51-52, 61-62 (circuit court's erroneous exclusion of parent's counsel prevented parent from challenging state's evidence during the factfinding phase, which violated right to counsel, and denial of counsel during critical stage requires reversal).  When a parent is deprived "of the statutory right to counsel in a [TPR] proceeding," the parent is deprived "of a basic protection without which, according to our legislature, a [TPR] proceeding cannot reliably serve its function."  ***Id.***, ¶63.  Accordingly, under these circumstances, "[t]he fairness and integrity of the judicial proceeding that the legislature has established for termination proceedings has been placed in doubt," and "the denial of the statutory right to counsel … constitutes structural error." *See **id.***  This matter is therefore reversed and remanded to the circuit court for further proceedings consistent with this opinion.[18]

---

[17] Notably, the issue of whether Anna had waived her right to counsel was not even mentioned during the January 12th hearing.

[18] In light of this court's conclusion, it is unnecessary to address whether Judge Dougvillo erred in denying Anna's motion to vacate the summary judgment motion.

22

*By the Court.*—Orders reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.