COURT OF APPEALS
DECISION
DATED AND FILED

May 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2023AP2068**
**2023AP2069**

Cir. Ct. Nos.  2022TP59
2022TP60

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

No. 2023AP2068

IN RE THE TERMINATION OF PARENTAL RIGHTS TO R.A.C., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,

PETITIONER-RESPONDENT,

V.

M.A.C.,

RESPONDENT-APPELLANT.

---

No. 2023AP2069

IN RE THE TERMINATION OF PARENTAL RIGHTS TO R.M.F., JR., A PERSON UNDER THE AGE OF 18:

---

**KENOSHA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**M.A.C.,**

    **RESPONDENT-APPELLANT.**

---

       APPEALS from orders of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

    ¶1    NEUBAUER, J.[1]  In these consolidated appeals, M.A.C., referred to herein by the pseudonym Molly, appeals from orders terminating her parental rights to her children, R.A.C. and R.M.F., Jr., referred to herein by the pseudonyms Russell and Rebecca. Molly contends that the circuit court erred in denying her postdisposition motion without holding an evidentiary hearing. In the motion, Molly alleged that her trial counsel in the termination proceedings provided ineffective assistance by advising her to admit certain requests for admission related to the grounds for termination. Because the record conclusively established that Molly was not entitled to relief on her ineffective assistance claim, the circuit court did not err in denying her motion without a hearing.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**BACKGROUND**

¶2 Termination of parental rights proceedings involve two phases: the grounds phase and the dispositional phase. *See Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. In the grounds phase, the finder of fact must determine whether the government establishes the grounds it pleaded "for involuntary termination under WIS. STAT. § 48.415." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. If the factfinder determines that the government has established grounds to terminate under § 48.415, "the court shall find the parent unfit." WIS. STAT. § 48.424(4). The proceeding then enters the second, dispositional phase, during which "the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." *See Steven V. v. Kelley H.*, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.426(2).

¶3 In January 2020, Russell and Rebecca were found to be in need of protection or services. On March 10, 2020, the circuit court entered dispositional orders placing the children in foster care and directing the Kenosha County Division of Children and Family Services (the County) to provide the following services to Molly: "Individual Therapy, Anger Management Services, Psychological Evaluation/services, Random UA's, Parenting Education, Visitation and Case Management." The disposition orders also specified the conditions Molly and the children's father would have to meet before the children would be returned to their home.

¶4 In November 2022, the County filed petitions seeking to terminate Molly's parental rights to Russell and Rebecca, as well as the rights of their

3

father.[2]  As grounds for termination, the County alleged that both children were in continuing need of protection or services.  *See* WIS. STAT. § 48.415(2).  To establish this ground for terminating a parent's rights, a petitioner must prove three things by clear and convincing evidence:  (1) "the child has been adjudged to be a child … in need of protection or services and placed … outside his or her home pursuant to one or more court orders … containing the notice required by [WIS. STAT. §] 48.356(2)"; (2) "the agency responsible for the care of the child … has made a reasonable effort to provide the services ordered by the court"; and (3) "the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1. [and] the parent has failed to meet the conditions established for the safe return of the child to the home."  WIS. STAT. §§ 48.31(1), 48.415(2)(a)1.-3.

¶5      According to affidavits from a social worker that were attached to the petitions, the County "ha[d] made a reasonable effort to provide the services ordered by the court" but Molly had failed to meet the conditions for return. Molly contested the petitions and asked for a jury trial.

¶6      Before trial, the County served requests for admission on Molly that sought admissions related to the three elements.  Molly, through her trial counsel, responded to the requests and admitted that the County "made a reasonable effort to provide the services ordered by the court."  She denied, however, the County's request seeking an admission that she had not met each of the conditions required for the safe return of her children.

---

[2] In *Kenosha County Division of Children & Family Services v. R.M.F.*, Nos. 2023AP2156 & 2023AP2157, unpublished slip op. (WI App Feb. 21, 2024), this court affirmed the circuit court's orders terminating the father's parental rights.

4

¶7     Molly's and the father's cases were tried jointly in April 2023. In its opening statement, the County discussed the three elements it had to prove. As to the first element, the County told the jury that "[t]here is really no dispute" that Russell and Rebecca had been placed outside of Molly and the father's home pursuant to a court order. Turning to the second element, the County invoked Molly's admission in addressing the County's reasonable efforts to provide court-ordered services:

> The second question is going to be did the social services agency make reasonable efforts to help the parents.
>
> Now we asked this question of the mother, [Molly], as part of the discovery process leading up to trial, and she agreed that, yes, the social services agency has made reasonable efforts. So with regard to the mother, the answer to that question is "yes."

Because, in the County's view, the first two elements were undisputed, it identified the third element—whether the parents had met the conditions of return—as "really the only question that … is going to be in real dispute."

¶8     Molly's counsel offered a different view of the second element in his opening statement. He acknowledged that "services were provided" to Molly by the County but said that "[t]here were some services she believes that she did not receive but we'll have testimony and we'll go into that."

¶9     The County called Molly as its first witness. She acknowledged receiving the dispositional order in March 2020 that warned her that her parental rights could be terminated "if your children have been placed outside of the home for six months or longer and the social workers have provided reasonable services to you, and you haven't met the conditions of this order for the return of your children." She also confirmed that she had reviewed the County's requests for

5

admissions with her trial counsel and "did agree at the time" the responses were provided "that the [County] ha[d] made reasonable efforts to provide the services ordered by the [c]ourt":

> Q  And in the process leading up to this trial your attorney received some requests for admission asking certain questions and ask[ed] you to admit them, correct?
>
> A  Yes.
>
> Q  And one of them was to admit that the [County] made a reasonable effort to provide the services ordered by the [c]ourt; is that right?
>
> A  Yes.
>
> Q  And you and your attorney have admitted that the [County] has made reasonable efforts to provide the services ordered by the [c]ourt, correct?
>
> A  I did agree at the time.
>
> Q  Okay.  And that was something that your attorney and you went over and your attorney signed off on March 13, 2023, just about a month ago, correct?
>
> A  Yes.

¶10  When questioned by her counsel, Molly testified she did not believe at the time of trial that the County had made reasonable efforts to provide the court-ordered services because it

> failed to place [her] children within [her] family or consider other possible placements and uphold sibling visitation since [her] incarceration.[3]  And eighteen months prior to [her] being incarcerat[ed] [her] older girls were in West Allis in a different foster home and had to have separate visitations.  So there was many reasons why [she]

---

[3]  Molly was incarcerated from September 23, 2021 through the time of trial.

6

felt like the [County] did not make reasonable amount of
effort to help [her] with [her] conditions.

Molly also denied that she had ever seen the requests for admission and stated that she and her counsel had reviewed them together over the phone. When asked about her response to the request for admission regarding reasonable efforts, Molly testified that she did not understand the request to encompass all of the services the County had provided and restated her belief that the County did not make "reasonable efforts to help [her] meet the conditions and meet all of them." Specifically, she acknowledged that the County facilitated visitation with her and her children but testified that they denied her increased visitation because she had not "made enough progress."

¶11    On redirect examination, the County showed Molly the requests for admission and her responses and confirmed she had admitted that the County had made reasonable efforts to provide the court-ordered services. A short time later, the County objected to continued questions about the requests by the father's counsel, arguing that Molly was "bound by that document by statute and it is misleading to the jury" to suggest otherwise. The County cited WIS. STAT. § 804.11(2), which provides that a "matter admitted under this section is conclusively established unless the court on motion permits withdrawal or amendment of the admission" and noted that Molly had not filed such a motion. The circuit court, noting that Molly's counsel had signed her responses to the requests for admission, stated that it would receive them "under the general rule that a client is bound by the statement of the attorney if made in the context of the legal relationship but other evidence may be received on that subject" and that it would rule on the question whether the admitted facts were conclusively established if any party asked it to do so later in the case.

¶12 The next day, Molly's counsel moved to withdraw her admission to the request about the County making reasonable efforts to provide court-ordered services. Counsel explained that he had reviewed the request with Molly when it was served but that with "more time to think about it and reviewing all the information she basically changed her mind." Counsel argued that "the [County] would not be prejudiced [by] allowing the withdrawal [because] the jury still will be able to hear and it's the reasonableness of the services provided."

¶13 The County opposed the motion, arguing that it would be prejudiced by having to present evidence on an issue it did not learn Molly intended to dispute until her trial testimony. It also argued that the reason Molly had given for changing her mind—that the County had allegedly not done enough to place her children with a family member—"is not a service ordered by the [c]ourt. It has nothing to do with the court-ordered conditions of return." In addition, the County noted, that issue "ha[d] only arisen in the past month because there has been an issue with regard to the foster home," whereas the time frame applicable to the County's reasonable efforts "cuts off on the date of the filing of the termination of parental rights petition," which in Molly's cases was November 2, 2022. The County urged the circuit court to deny the motion and instruct the jury that the answer to the question whether the County had made reasonable efforts is "yes."

¶14 After the argument on Molly's request, the County presented testimony from the social worker assigned to Molly's case, who testified about the visitation services Molly received. The social worker explained that Molly began with supervised visitations attended by a person from Children's Hospital, as is typical. Though the program is structured such that a parent can progress from supervised to unsupervised visits, Molly remained in supervised visits until she was incarcerated in September 2021, at which point the visits stopped. The social

worker explained that Molly's visits remained supervised because she made inappropriate comments to Russell and Rebecca and did not discipline them during the visits.

¶15    The following day, the court concluded that the County "[was] correct on all points" and declined to allow Molly to withdraw her admission. Consistent with its ruling, the circuit court answered "yes" to questions on the verdict form pertaining to the first two elements of the continuing need of protection or services ground as to Molly.  Thus, the jury was required only to answer the question as to the third element—whether Molly had failed to meet the conditions for the safe return for her children.  The jury concluded she had not met the conditions for return.  The court subsequently held a dispositional hearing at which it determined that termination of Molly's parental rights would be in the children's best interest.

¶16    Molly filed a postdisposition motion arguing that her trial counsel was ineffective because he allowed her to admit in discovery that the County had made reasonable efforts to provide court-ordered services and did not "follow the correct procedure to withdraw the admission."  She asserted that her trial counsel had never explained to her the meaning of "reasonable effort," which is defined in WIS. STAT. § 48.415(2)(a)2.a. to mean "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child …, the level of cooperation of the parent[,] … and other relevant circumstances of the case."  Molly asserted that she would have denied the admission had she been aware of this definition and that there was a reasonable probability that, absent the admission, the jury would not have determined that the County made reasonable efforts.  The circuit court denied Molly's motion without holding an evidentiary hearing after

concluding that the motion had not established that any error by Molly's trial counsel had prejudiced her.[4]

## DISCUSSION

¶17    Parents in termination proceedings have the right to effective assistance of counsel. *A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). Ineffective assistance claims are typically evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, Molly must establish that her trial counsel's performance was deficient and that the deficient performance prejudiced her. *See id.* at 687. If this court concludes that Molly has not established one of these elements, it need not analyze the other. *See State v. Mayo*, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115 ("[W]e need not address both the performance and the prejudice elements, if the defendant cannot make a sufficient showing as to one or the other element.").

¶18    On appeal, Molly argues that the circuit court erred in denying her postdisposition motion without holding an evidentiary hearing. "A hearing on a [postdisposition] motion is required only when the movant states sufficient material facts that, if true, would entitle the [movant] to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433; *State v. J.A.*, No. 2018AP1257, unpublished slip op. ¶39 (WI App Dec. 4, 2018) (applying *Allen* standards to denial of postdisposition motion in termination of parental rights proceeding).[5] A court may deny a postdisposition motion without a hearing

---

[4] The Honorable Gerad T. Dougvillo entered the order denying Molly's postdisposition motion.

[5] Though unpublished, *State v. J.A.*, No. 2018AP1257, unpublished slip op. (WI App Dec. 4, 2018), may be cited pursuant to WIS. STAT. RULE 809.23(3)(b).

"if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Allen*, 274 Wis. 2d 568, ¶9. Whether a motion alleges sufficient facts that, if true, would entitle the movant to an evidentiary hearing presents a question of law that we review de novo. *Id.*

¶19 Initially, Molly argues that she should not have to prove prejudice because her counsel committed a "fundamental" error "[b]y advising her to create documentary evidence that resulted in a directed verdict on the otherwise disputed question of reasonable efforts," which Molly says resulted in the loss of her "statutory right to a trial" on that element. In support, she cites our supreme court's decision in *State v. Shirley E.*, 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623. In that case, a circuit court found a parent in default for failing to appear personally at several hearings in a termination proceeding and dismissed the parent's appointed counsel before conducting fact-finding and dispositional hearings at which only the state's lawyer and witness were present. *Id.*, ¶¶13-18. On review, our supreme court held that the circuit court had improperly denied the parent her right to counsel under WIS. STAT. § 48.23(2), which constituted a "structural error" because it "deprive[d] the parent of a basic protection without which, according to our legislature, a termination of parental rights proceeding cannot reliably serve its function." *Shirley E.*, 298 Wis. 2d 1, ¶63. Thus, the court concluded, the error was "per se prejudicial" and not subject to review for harmless error. *Id.*, ¶¶61-62; *see also Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

¶20 This court concludes that Molly's argument lacks merit for two reasons. First, unlike the right to counsel in termination proceedings, Molly did

11

not have an absolute right to have a jury decide whether the State had met its burden as to each element of the continuing need of protection or services ground for termination. That much is evident from our supreme court's decision in **Steven V.**, where the court recognized that "[s]ummary judgment … is just as appropriate in the unfitness phase of a TPR case where the facts are undisputed as it is in any other type of civil action or proceeding which carries the right to a jury trial." **Steven V.**, 271 Wis. 2d 1, ¶35. If a circuit court may conclude before trial in the grounds phase that the facts material to a particular issue are not in genuine dispute and grant summary judgment, it surely may reach the same conclusion during the trial if the presentation of evidence reveals a similar lack of genuine dispute.

¶21 Second, the asserted error in this case is materially less significant than the complete denial of counsel in **Shirley E.** Molly was not completely deprived of the assistance of counsel when responding to the County's requests for admission. To the contrary, as she acknowledged, she reviewed the requests with her counsel, who subsequently prepared and served her responses. The alleged error in admitting one of the requests is not "so fundamental that [it is] considered per se prejudicial" because it did not "upset[] the framework within which trial proceed[ed]"—it merely eliminated the need for a jury finding as to one element of the ground at issue. *See* **Shirley E.**, 298 Wis. 2d 1, ¶62. Thus, Molly remains obligated to prove prejudice.

¶22 Turning to the issue raised on appeal, this court concludes that the circuit court did not err in denying Molly's postdisposition motion without first conducting an evidentiary hearing. The record conclusively demonstrates that Molly is not entitled to relief because she cannot establish that her trial counsel's

involvement in her pretrial admission that the County made reasonable efforts to provide court-ordered services prejudiced her.

¶23    To establish prejudice, Molly must show that her trial counsel's "error[ was] so serious as to deprive [her] of a fair [proceeding] whose result is reliable." *See* **Strickland**, 466 U.S. at 687.  To do so, Molly "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See **id.*** at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***

¶24    Molly cannot establish prejudice because she cannot show a reasonable probability that, had her counsel denied the County's request for admission regarding its reasonable efforts to provide court-ordered services (or withdrawn her admission) before trial, the jury would not have concluded that the County had established grounds for termination of her parental rights.  In the dispositional orders entered in March 2020, the circuit court ordered the County to provide the following services to Molly:  "Individual Therapy, Anger Management Services, Psychological Evaluation/services, Random UA's, Parenting Education, Visitation and Case Management."  Each subsequent order issued by the court until the County filed the termination of rights petitions specified that the County had made reasonable efforts to provide those services. The social worker also confirmed that she believed the County had made reasonable efforts to provide the services.

¶25    Molly identified three reasons at trial for her belief that the County had not made reasonable efforts to provide court-ordered services:  (1) the County's failure to place her children with a member of her family or "consider

13

other possible placements"; (2) the County's failure to "uphold sibling visitation since [her] incarceration"; and (3) the County's placement of her "older girls" in a different foster home that necessitated separate visitations. None of these reasons would have furnished a basis for the jury to determine that the County did not make reasonable efforts.

¶26 First, the County's decision not to place Russell and Rebecca with a member of Molly's family was irrelevant to the issue of reasonable efforts because, as the County noted at trial, it had not been ordered to place the children with a family member. That placement decision was not among the services the County had been ordered to provide to Molly. The same reasoning applies to the County's decision to place her other children in a different foster home from Russell and Rebecca. Finally, Molly's reference to the County not "uphold[ing] sibling visitation" following her incarceration is unclear, but to the extent it refers to the inability of her children to visit each other while she was incarcerated, that too is not a service the County was ordered to provide. The County's obligation was to facilitate visits between Molly and her children.[6]

¶27 Molly does not raise any arguments concerning the other two elements the County was required to prove to establish the children's continuing need of protection or services. Thus, she has not shown a reasonable probability that the outcome of the trial in the grounds phase would have been different.

---

[6] Molly points to her trial testimony that she requested additional visitation and argues that the County's failure to provide it was unreasonable. Given the extensive evidence regarding Molly's failure to progress during the visitation she received, and her failure to develop any facts to the contrary, she has not shown prejudice and thus that she is entitled to relief.

## CONCLUSION

¶28      For the reasons stated above, this court concludes that the circuit court did not err in denying Molly's postconviction motion without an evidentiary hearing because the record conclusively demonstrates that she is not entitled to relief on her ineffective assistance claim.

*By the Court.*—Orders affirmed.

This opinion will not be published.      *See* WIS. STAT. RULE 809.23(1)(b)4.